**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0816n.06

**No. 08-3461**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Dec 21, 2009
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| GERARDO BONILLA, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Following his conviction based on a conditional guilty plea, Defendant Gerardo Bonilla appeals the district court's denial of his motion to suppress the evidence found in his vehicle. For the following reasons, we REVERSE the district court's decision denying the motion to suppress and REMAND for proceedings consistent with this opinion.

**BACKGROUND**

In 2007, Bonilla was traveling eastbound on Interstate 70 in Preble County, Ohio in a Chevrolet Avalanche with Colorado tags when he was stopped by Deputy Sheriff Gerald Bemis of the Montgomery County Sheriff's Department for following a tractor-trailer too closely. Bemis had received a call on his cell phone from Trooper Richard Barrett of the Ohio State Highway Patrol,

who alerted Bemis that he had been following Bonilla for sixteen miles and observed suspicious activities.[1] Bemis, who travels with a dog, was stationed on Interstate 70 and followed Bonilla after the Avalanche passed him. Bemis testified that he observed Bonilla following too closely–approximately one car length–to a Saturn car that had recently merged onto the interstate. Bemis then saw Bonilla follow too closely to a tractor-trailer and pulled Bonilla over at approximately 4:01 p.m.

Bemis told Bonilla that he was being stopped for following too closely and ordered Bonilla out of the car. Bonilla told Bemis he was going to "Columbus on vacation." Bonilla then consented to a pat down. Bonilla told Bemis that his passenger was his girlfriend, but could not recall her last name and had only known her for a little while. When Bonilla stated that his driver's license was in the car, Bemis told him to wait there while Bemis retrieved the license and passenger information. Bonilla then recalled his passenger's last name and said that he had known her for three years. When Bemis asked the passenger where they were traveling, the passenger stated that they were traveling to "Columbus to visit friends." Bemis testified that it was at that point that he thought Bonilla's story "didn't make sense" and made up his mind that he wanted his dog to conduct a "free-air" sniff of the vehicle.

Bemis returned to his car at approximately 4:07 p.m. to write Bonilla a traffic ticket, run his license through LEADS and NCIC, and call for backup in order to have his dog conduct a sniff of Bonilla's vehicle. Bemis's intent was to fill out the citation and then walk the dog around the car.

---

[1]Barrett testified that his suspicions arose because Bonilla was driving a large vehicle with out-of-state tags approximately ten miles per hour under the speed limit and looked nervous. Although Barrett followed Bonilla for approximately sixteen miles, he did not observe any traffic violations.

It took approximately eight minutes for the LEADS and NCIC check to be completed. Bonilla was required to lean against the deputy's car during the time Bemis checked his license and wrote the traffic ticket. Bemis did not let Bonilla re-enter the Avalanche because it had not been searched for weapons. Once the results of the checks came up on the terminal, Bemis remained in his cruiser and continued completing a "Form 16" and a traffic citation for following too closely.

At approximately 4:23 p.m., two backup officers arrived at the scene. Bemis ceased writing the ticket, removed the passenger from the Avalanche, and placed Bonilla and the passenger in separate police vehicles. Bemis had not completed filling out the ticket for Bonilla at this time; he claimed it usually took thirty to thirty-five minutes to issue an out-of-state driver a traffic ticket. Bemis then walked his dog around the vehicle. At 4:25 p.m., the dog alerted to an odor coming from the vehicle. Bemis informed Bonilla that narcotics had been detected. A subsequent search of the vehicle turned up ten kilograms of cocaine.

Bonilla was later indicted for (1) conspiracy to possess with the intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; (2) possession with the intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii); and (3) traveling in interstate commerce with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. Bonilla's motion to suppress the evidence was denied by the district court.

Bonilla then entered a conditional plea agreement in which he agreed to plead guilty to the conspiracy charge and the other two counts were dropped. He was sentenced to a term of imprisonment of 60 months.

**STANDARD OF REVIEW**

"This Court reviews a district court's decision on a motion to suppress the evidence under 'two complimentary standards. First, the district court's findings of fact are upheld unless clearly erroneous. Second, the court's legal conclusion as to the existence of probable cause is reviewed de novo.'" *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (quoting *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir.1994)).

**DISCUSSION**

**I. Validity of the Traffic Stop**

Bonilla argues that the district court erred in denying his motion to suppress because Bemis did not have probable cause to effectuate the traffic stop. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (citing *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir.1996)).

In arguing that the traffic stop lacked probable cause, Bonilla first asserts that Bemis's and Barrett's testimonies were not credible. His argument is unpersuasive; the district court found no issue with the credibility of Bemis or Barrett, and neither do we. "We afford the district court's credibility determinations regarding witness testimony great deference and must uphold its findings of fact unless they are clearly erroneous." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007).

Concerning Bonilla's argument that the initial stop by Bemis was not supported by probable cause even if Bemis's testimony is considered credible, Bonilla's argument fails in this respect as well. Probable cause is satisfied when the facts and circumstances within the officer's knowledge,

based on reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Davis*, 430 F.3d at 352. Bonilla was stopped for violating Ohio Rev. Code § 4511.34(A), which provides,

> The operator of a motor vehicle . . . shall not follow another vehicle . . . more closely than is reasonable and prudent, having due regard for the speed of such vehicle. . . and the traffic upon and the condition of the highway.

Section 4511.34 requires one car-length between vehicles for every ten miles per hour of speed. *See United States v. Dukes*, 257 F. App'x 855, 858 (6th Cir. 2007).

Bemis witnessed Bonilla following approximately one car-length behind a Saturn and also following too closely to a tractor-trailer at speeds approaching sixty miles per hour. Although Bemis admitted that he began following Bonilla based on Barrett's initial observation, his motivation is irrelevant. *See Hill*, 195 F.3d at 264 (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."). Bemis had probable cause to believe a traffic violation had occurred. Since his testimony has not been proven incredible, the evidence supporting the probable cause determination is sufficient.

## II. Legality of the Search and Seizure

Bonilla argues that the district court erred in denying his motion to suppress because Bemis lacked the reasonable suspicion of criminal activity required to detain him based on suspicions of illegal drug activity. An officer may stop a vehicle when he has probable cause to believe a traffic violation has occurred. *Davis*, 430 F.3d at 352. "However, once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further

detention." *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) (citations and internal quotations omitted).

Before we determine whether Bemis had reasonable suspicion to detain Bonilla for drug activity, we must first define the scope of the initial traffic stop. *See id.* Here, we know the scope of the traffic stop was exceeded at some point because the stop culminated in the arrest of Bonilla for transporting drugs in his vehicle. Thus, we must determine the point at which the original purpose of the traffic stop–writing the traffic citation–ceased and the detainment of Bonilla and his passenger began. *Id.* Once the scope and duration of the stop is determined, we then focus on whether Bemis had a reasonable and articulate suspicion that criminal activity was afoot at the time of Bonilla's detention. *See id.*

### A. Scope of the Traffic Stop

In order to remain within the scope of the initial traffic stop, the officer's actions must reasonably relate to the purpose of the original stop. *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009) (In the absence of reasonable suspicion, "all the officer's actions must be reasonably related in scope to circumstances justifying the original interference." (citing *United States v. Townsend*, 305 F.3d 537, 541(6th Cir. 2002) (internal quotations omitted))). The core question concerning when a traffic stop turns into a Fourth Amendment issue has been framed as: "at what point in time did the purpose of the traffic stop end and the detention of the driver and the [vehicle's] occupants . . . begin?" *Torres-Ramos*, 536 F.3d at 550.

Requesting a driver's license, registration, rental papers, running a computer check thereon, and issuing a citation do not exceed the scope of a traffic stop for a speeding violation. *Hill*, 195 F.3d at 269. "'[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police

- 6 -

officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). Moreover, "the use of a well-trained narcotics-detection dog" during a traffic stop does not, in itself, infringe any constitutionally protected privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

When the dog made a "hit" during a sniff of the Avalanche, Bemis had the reasonable suspicion necessary to seize Bonilla and search his vehicle. *See Diaz*, 25 F.3d at 393-94. However, Bonilla contends that he was detained on suspicion of illegal activity before the dog alerted.

Here, Bonilla was ordered out of the car, patted down, and questioned about where he was going. His passenger was also questioned as to where the two were traveling. Bonilla was required to lean against the cruiser during the entire LEADS and NCIC check of his license, which took approximately seventeen minutes. At 4:07, Bemis called for backup with the intent of running his dog around the vehicle. Upon the arrival of backup at approximately 4:23, Bemis stopped writing the traffic citation, exited his cruiser, removed the passenger from the Avalanche, placed Bonilla and the passenger in different police cruisers, and conducted a sniff with his dog. During the sniff, the dog "hit" and alerted Bemis.

Two recent cases are instructive in determining when the purpose of a traffic stop turns into a detainment. In *Torres-Ramos*, the purpose of a traffic stop for speeding ended when the driver was placed in the back of a patrol car and the passenger was questioned. 536 F.3d at 551. Once the driver was placed in the patrol car for reasons such as failing to identify the owner of the vehicle he was driving, the court considered the original stop to have ended and a detainment requiring

- 7 -

reasonable suspicion to have begun.[2] *Id.* We held, "[i]ssuing a speeding ticket does not require an officer to detain an individual in order to separately question a passenger regarding ownership or travel plans" and therefore concluded it was at this point that the original purpose of the stop ended. *Id.*

In *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008), the purpose of a tag-light stop was fulfilled as soon as the officer obtained all the information necessary to write a citation for the violation and no proof of insurance. Thus, as soon as the officer returned to the defendant's vehicle two minutes later and informed the defendant that a dog would be called to the scene (after consent to search was denied), we held that the remainder of the stop required reasonable suspicion and was in violation of the Fourth Amendment. *Id.*

The situations in *Torres-Ramos* and *Blair* are similar to the instant case where, upon the arrival of backup, Bemis stopped writing the traffic citation, removed the passenger from the vehicle and placed Bonilla and the passenger in the back of cruisers before having his dog perform a sniff. At this point, the officer's actions ceased being reasonably related in scope to the initial stop, *see Bell*, 555 F.3d at 541, and any concerns of the original traffic stop were overshadowed by the officer's suspicions of the contents of the vehicle. From this point, the scope of the initial stop had been exceeded and Bemis was required to have a reasonable suspicion that criminal activity was afoot. *See Hill*, 195 F.3d at 264.

---

[2]There was no constitutional violation in *Torres-Ramos*, however, because the officer had reasonable suspicion that the driver unlawfully possessed the vehicle he was traveling in. 536 F.3d at 553.

## B. Reasonable Suspicion

The district court held that the totality of the circumstances gave Bemis reasonable suspicion to justify the detention of Bonilla for the minimal amount of time it took him to verify the suspicions he had. However, since Bemis ceased pursuing the original purpose of the traffic stop and began to pursue the suspected drug trafficking activity, he was required to have a "reasonable and articulable suspicion that criminal activity was afoot," *id.* (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998) (en banc)), regardless of how short the detention was. *United States v. Urrieta*, 520 F.3d 569, 578 (6th Cir. 2008) ("Under the Fourth Amendment, even the briefest of detentions is too long if the police lack a reasonable suspicion of specific criminal activity.") (citing *Townsend*, 305 F.3d at 541, 545).

Under *Terry v. Ohio*, 392 U.S. 1 (1968), the reasonable suspicion framework involves "a two-part analysis of the reasonableness of the stop." *Davis*, 430 F.3d at 354. We first determine "'whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.'" *Id.* (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). We make this determination based on the totality of the circumstances. *Id.* Second, if we conclude that the basis for the stop was proper at its inception, we must then determine "'whether the degree of intrusion . . . was reasonably related in scope to the situation at hand . . . .'" *Id.* (quoting *Garza*, 10 F.3d at 1245).

For purposes of the situation at hand, we focus on the first part of the *Terry* analysis, that is, whether Bemis had reasonable suspicion sufficient to detain Bonilla at the moment he stopped writing the ticket for the traffic violation and began pursuit of the drug investigation. *See United*

- 9 -

*States v. Garrido*, 467 F.3d 971, 981 (6th Cir. 2006). "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir.2001) (citing *Terry*, 392 U.S. at 21).

Here, Bemis decided to detain Bonilla and conduct the dog search based on (1) the information relayed to him by Barrett, including Bonilla's nervous appearance, the vehicle's size and out-of-state license plate, (2) Bonilla's intended destination, (3) Bonilla's and his passenger's statements that they were going to "Columbus for vacation" and "Columbus to visit friends," respectively, and (4) the fact that Bonilla could not initially recall his passenger's last name or the amount of time he had known her.

The government acknowledges that none of these factors, viewed independently, appear to indicate criminal activity, but it argues that the collective view of these factors rise to the level of reasonable suspicion. One case will seldom provide "useful 'precedent' for another" in evaluating reasonable suspicion. *Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983). Thus, we will survey several cases in this circuit and make a reasonable suspicion determination based on a totality of the circumstances. *See Torres-Ramos*, 536 F.3d at 552-53; *Garrido*, 467 F.3d at 982-83.

Although generally included as one of several grounds for reasonable suspicion, a driver's nervousness when stopped is often common and, therefore, given little weight. *See Urrieta*, 520 F.3d at 577 (finding "nervousness inherently *unsuspicious*").

Likewise, Bonilla's destination of Columbus, Ohio is not indicative of illegal activity. *See id.* at 576-77 (noting that "travel between population centers is a relativity weak indicator of illegal activity because there is almost no city in the country that could not be characterize[d] as either a

major narcotics distribution center or a city through which drug couriers pass on their way to a major narcotics distribution center") (internal quotations omitted).

Third, the government argues that the discrepancies between Bonilla's and his passenger's travel plans are grounds for reasonable suspicion. Inconsistencies in the claimed purpose of a trip may be grounds for reasonable suspicion. *Hill*, 195 F.3d at 272. However, in *Hill*, the discrepancies in travel plans were much more suspicious than in the instant case. There, the defendants provided an implausible explanation for their trip, including multiple conflicting stories about the duration of the trip, illogical inconsistencies about coordinating the trip with a third party (a purported move), and a statement about military moving procedures that the officer knew was suspicious based on his experience. *Id.* The instant case is distinguishable as the difference between "for vacation" and "to visit friends" is negligible, and it is plausible that the two were traveling to Columbus to accomplish both stated objectives. *See Townsend*, 305 F.3d at 543 (defendants' story was not found to be suspicious although the officer thought the defendants were lying about their travel plans).

Lastly, the fact that Bonilla could not remember his passenger's last name and stated he only knew her for a short time even though she was his girlfriend does raise some red flags, but it does not rise to the level of suspicion of the presence of contraband. *See Torres-Ramos*, 536 F.3d at 552-53 (summarizing the past decisions of this court with regard to grounds for a reasonable suspicion). At minimum, Bonilla's statement was a temporary memory lapse, at most, a lie. Even assuming that Bemis recognized the statement as a lie, Bonilla quickly recanted with truthful information. Further, Bemis testified that although he found Bonilla's omission of his girlfriend's name "unusual," it did not prompt him to want to have his dog conduct a sniff of Bonilla's vehicle.

- 11 -

Bemis testified his suspicions arose after the alleged inconsistency from the passenger about their travel plans to "visit friends."

Although Bemis had his suspicions, they did not rise to the level required of suspecting Bonilla of criminal activity. As this court held in *Bell*,

> Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that this court has "recognized as valid considerations in forming reasonable suspicion," they may not together provide reasonable suspicion if "they are all relatively minor and ... subject to significant qualification," particularly where the "case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases."

555 F.3d at 540 (citing *Townsend*, 305 F.3d at 545). The instant case lacks any strong indicators of criminal conduct other than minor actions by Bonilla that are generally present when a driver is pulled over. Bonilla's failure to promptly provide the officer with his passenger's correct information was not particularly indicative of criminal activity. Thus, the totality of the circumstances did not give rise to a reasonable suspicion that Bonilla was transporting drugs in his vehicle at the moment when Bemis stopped writing the traffic citation and placed Bonilla and his passenger in police cruisers.

Since we conclude that no reasonable suspicion was present at the inception of the detention on suspicion of transporting drugs, the detention was an unlawful seizure and we do not need to address the second part of the *Terry* analysis, whether the time and intrusiveness of the stop were reasonable. *See Davis*, 430 F.3d at 354. The fact that Bemis only detained Bonilla for a short period of time when he ceased writing the ticket and placed Bonilla and his passenger in police cruisers is irrelevant since Bemis lacked reasonable suspicion to do so. Thus, the district court erred in determining Bemis's detainment of Bonilla for a short period of time was reasonable.

- 12 -

**CONCLUSION**

REVERSED and REMANDED for further proceedings consistent with this opinion.

GRIFFIN, Circuit Judge, dissenting.

I join Section I (Validity of the Traffic Stop) of the majority's opinion, but respectfully dissent from my colleagues' analysis and holding regarding the subsequent search. In my view, the search did not violate defendant's right to be free from "unreasonable" searches under the Fourth Amendment. Therefore, I would affirm the order of the district court denying defendant's motion to suppress.

I.

The record reveals that Deputy Bemis initiated the stop at approximately 4:01 p.m. Bemis talked with Bonilla and his girlfriend, gathered their documents, and returned to his police vehicle at about 4:07 p.m. At that time, he called for back-up officers because he decided to conduct a "free air sniff" of defendant's vehicle. Bemis testified that he utilized the LEADS system approximately "[8] minutes into the traffic stop[,]" and that the other officers responded "probably 20 minutes into the traffic stop. Probably 12 minutes after [he] had asked for [back-up]." He further testified that while waiting, he "was completing [his] forms . . . . and starting the traffic citation."

When the other officers arrived at approximately 4:23 p.m., Bemis stopped writing the ticket, removed Bonilla's girlfriend from the car, and placed her and Bonilla in separate police vehicles. As the majority acknowledges, at that time, Bemis had not completed writing the traffic citation. Maj. Op. at 3. Bemis testified that it usually took thirty to thirty-five minutes to issue an out-of-state driver a traffic ticket. Bemis began to deploy his drug dog around the vehicle roughly twenty-four minutes into his encounter with Bonilla – a time well within the thirty to thirty-five minutes necessary for the officer to have completed the traffic stop.

- 14 -

Bemis then walked his K-9 around Bonilla's vehicle to conduct a free-air sniff, which lasted only one minute. The record indicates that the back-up officers arrived at roughly 4:23 p.m., and that the K-9 first alerted to the odor of illegal narcotic emitting from the vehicle at approximately 4:24 p.m. The K-9 was rewarded and placed back in the patrol vehicle by 4:25 p.m. Bemis subsequently asked Bonilla to drive the vehicle to a police post, where the vehicle was searched. The search revealed ten kilos of cocaine.

## II.

The grant or denial of a motion to suppress is a mixed question of law and fact. *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007). "On appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo." *Id.* When reviewing a district court's denial of a motion to suppress on the law, we consider the evidence in the light most favorable to the government. *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (citing *United States v. Montgomery*, 377 F.3d 582, 585 (6th Cir. 2004)).

## III.

### A.

The dog sniff, which does not constitute a "search" under the Fourth Amendment, *United States v. Place*, 462 U.S. 696, 707 (1983), occurred while Bemis was properly in possession of Bonilla's license and registration. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("[T]he use of a well-trained narcotics-detection dog – one that does not expose noncontraband items that otherwise would remain hidden from public view . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests.") (internal quotation marks and citation omitted). Most importantly, any delay in Bonilla's detention caused by conducting the brief drug dog sniff amounted to a de minimis

intrusion on Bonilla's liberty interest. Thus, it was not an unreasonable violation of his Fourth Amendment rights. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); *United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006) ("[E]ven if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two minute delay to conduct a canine sniff is a *de minimis* intrusion on the driver's personal liberty that does not violate the Fourth Amendment.") (internal citations and quotation marks omitted); *see also United States v. Boyce*, 351 F.3d 1102, 1107 n.4 (11th Cir. 2003) (citing *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001) for the proposition that "three minute detention after requested information arrived was *de minimis* and not an unconstitutional detention").

B.

Furthermore, the district court did not err in finding that Bemis had reasonable suspicion that criminal activity was afoot to prolong the traffic stop. "In evaluating the constitutionality of a *Terry* stop, we engage in a two-part analysis of the reasonableness of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). First, we ask "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) (internal quotation marks and citation omitted). Whether reasonable suspicion exists must be considered under the totality of the circumstances, recognizing that "even a string of innocent behavior added together may" satisfy this legal standard. *United States v. Richardson*, 385 F.3d 625, 631 (6th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002). "If the detention is proper, then the second question is whether the degree of intrusion . . . was reasonably related in

- 16 -

scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and surrounding circumstances." *Torres-Ramos*, 536 F.3d 542, 551-52 (6th Cir. 2008) (internal quotation marks and citation omitted).

Here, the record shows that Bemis had knowledge of the following facts when he allegedly expanded the scope of the initial stop: (1) Trooper Barrett's observations that (a) defendant was driving a large vehicle with tinted windows and out-of-state "tags" approximately ten miles per hour under the speed limit; (b) defendant appeared very rigid in his posture; and (c) *defendant appeared "scared to death"* when Barrett drove by his vehicle[1] (emphasis added); (2) *defendant claimed not to know his girlfriend's last name because he had known her for "a little while"*; (3) *however, when defendant learned that Bemis was going to speak with his girlfriend, he suddenly remembered her last name, and stated that he had known her for three years*; (4) defendant stated that he was going to Columbus on vacation; (5) while defendant's girlfriend stated that they were going to Columbus because they had never been there, and that they were going to visit friends.

In *Torres-Ramos*, we found that the following facts were sufficient to establish reasonable suspicion:

> (1) that [the driver] acted nervously in response to [the officer's] questions; (2) that the van was from [out of state] and had tinted windows; (3) that [the driver] was unable to provide the last name of the van's owner (though she did provide a reason, i.e., a recent marriage); and (4) that [the driver's] description of her travel plans were vague. With respect to the travel plans, [the officer] was suspicious about [the

---

[1]"Reasonable suspicion can be based upon police officers' own observations or upon the collective knowledge of other officers." *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994). It is important to note that Barrett "teach[s] [criminal interdiction] for several [f]ederal agencies . . ." in the United States, Canada, and Mexico, and trains officers to look for certain things, "certain driving mannerisms . . . patterns of demeanor from the driver" that "indicate suspicious" behavior.

driver's] claim that she had flown from Los Angeles to Vancouver, Washington to get the van earlier that week, yet could not remember the flight details.

*Torres-Ramos*, 536 F.3d at 552.

There are clear parallels between the facts of this case and those in *Torres-Ramos*. First, the officer observed the driver acting nervously. Second, the automobile was a large vehicle with tinted windows and out-of-state plates. Third, the officer confronted a driver who was unable to provide the last name of someone each driver would clearly be expected to know – the van's owner in *Torres-Ramos*, and the driver's girlfriend and passenger in the present case. Fourth, both drivers provided arguably plausible explanations for not knowing the individual's last name – a recent marriage in *Torres-Ramos* and a new dating relationship in the instant case. Finally, in each case, the drivers' descriptions of their travel plans were vague. Indeed, in the present case, not only were the travel plans provided by the driver ambiguous, they also conflicted with the plans stated by the passenger.[2] In this regard, the findings of fact by the district court were not clearly erroneous.

Although the majority first correctly states that a determination regarding reasonable suspicion must be based on a totality of the circumstances, they then proceed to address each factor supporting a finding of reasonable suspicion in isolation. Maj. Op. at 10-12. "*Terry*, however, precludes this sort of divide-and-conquer analysis." *Arvizu*, 534 U.S. at 274. The Supreme Court has consistently rejected attempts by lower courts to evaluate and reject factors "in isolation from each other" because this approach "does not take into account the 'totality of the circumstances' as [the Supreme Court's] cases have understood that phrase." *Id*. Here, defendant's behavior,

---

[2]As the majority acknowledges, "[i]nconsistencies in the claimed purpose of a trip may be grounds for reasonable suspicion." Maj. Op. at 11, citing *United States v. Hill*, 195 F.3d 258, 272 (6th Cir. 1999).

specifically, driving too slowly and his apparent rigidness, standing alone, are innocuous. Yet, when coupled with his reported nervousness, "he appeared to be scared to death," defendant's unusual and conflicting answers about his girlfriend, and the inconsistent statements from defendant and his girlfriend regarding the stated purpose of their trip,[3] there are sufficient relevant factors to support a finding of reasonable suspicion that criminal activity was afoot.

In this regard, the majority's analysis is fundamentally flawed because it is limited to whether the evidence supports a finding that defendant was engaged in transporting "contraband" rather than suspicion of criminal activity in general:

> Lastly, the fact that Bonilla could not remember his passenger's last name and stated he only knew her for a short time even though she was his girlfriend does raise some red flags, but it does not rise to the level of suspicion of the presence of contraband.
>
> * * *
>
> Thus, the totality of the circumstances did not give rise to a reasonable suspicion that Bonilla was transporting drugs in his vehicle at the moment when Bemis stopped writing the traffic citation and placed Bonilla and his passenger in police cruisers.

Maj. Op. at 11-12. It is well-settled that reasonable suspicion that "criminal activity may be afoot" does not require suspicion of a specific crime, but rather criminal activity in general. *Terry*, 392 U.S. at 30; *see also United States v. Martinez*, 808 F.2d 1050, 1053 (5th Cir. 1987) ("In *Terry v. Ohio*, the Supreme Court recognized that a reasonable suspicion of criminal activity based on contemporaneous observations may justify a temporary stop and detention for the purpose of

---

[3]Although Bonilla's and his girlfriend's answers were consistent regarding their ultimate destination, Colombus, Bemis testified that the stated purpose of their trip was inconsistent: "It didn't match up. She didn't say: We are on vacation going to Columbus. She said: we are going to visit some friends. We have never been to Columbus so we are going to go to Columbus."

investigating that suspicion, even though the officer does not have probable cause to believe that a particular crime has been committed.") (footnote omitted).

The majority acknowledges that "Bemis only detained Bonilla for a short period of time," but finds this fact "irrelevant" because they hold that "Bemis lacked reasonable suspicion to do so." Maj. Op. at 12. Because I conclude that reasonable suspicion was present, I briefly address the second part of the *Terry* analysis – whether the time and intrusiveness of the stop were reasonable. As noted above, the drug dog sniff only took one minute to complete. During this time, Bemis "'diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly[.]'" *United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Accordingly, because the added detention was "sufficiently limited in time" and "used the least intrusive [investigative] means reasonably available[,]" I conclude that the duration and scope of the detention was constitutionally permissible. *Bennett v. City of Eastpointe*, 410 F.3d 810, 825 (6th Cir. 2005) (internal quotation marks and citation omitted).

Given *Arvizu* and our findings in *Torres-Ramos*, I conclude that, under the totality of the circumstances, the forgoing facts are sufficient to establish a reasonable suspicion that criminal activity was afoot. Moreover, because I also find that the "degree of intrusion . . . was reasonably related in scope to the situation at hand," I would hold that it was constitutionally permissible for Bemis to briefly detain Bonilla beyond the scope of the initial stop to run his drug dog around the vehicle. *Garza*, 10 F.3d at 1245 (internal quotation marks and citation omitted).

IV.

For these reasons, I would affirm the district court's order denying the motion to suppress. Accordingly, I respectfully dissent.