*694 SILER, Circuit Judge.
Following his conviction based on a conditional guilty plea, Defendant Gerardo Bonilla appeals the district court’s denial of his motion to suppress the evidence found in his vehicle. For the following reasons, we REVERSE the district court’s decision denying the motion to suppress and REMAND for proceedings consistent with this opinion.
BACKGROUND
In 2007, Bonilla was traveling eastbound on Interstate 70 in Preble County, Ohio in a Chevrolet Avalanche with Colorado tags when he was stopped by Deputy Sheriff Gerald Bemis of the Montgomery County Sheriffs Department for following a tractor-trailer too closely. Bemis had received a call on his cell phone from Trooper Richard Barrett of the Ohio State Highway Patrol, who alerted Bemis that he had been following Bonilla for sixteen miles and observed suspicious activities.[1] Bem-is, who travels with a dog, was stationed on Interstate 70 and followed Bonilla after the Avalanche passed him. Bemis testified that he observed Bonilla following too closely — approximately one car length — to a Saturn car that had recently merged onto the interstate. Bemis then saw Bon-illa follow too closely to a tractor-trailer and pulled Bonilla over at approximately 4:01 p.m.
Bemis told Bonilla that he was being stopped for following too closely and ordered Bonilla out of the car. Bonilla told Bemis he was going to “Columbus on vacation.” Bonilla then consented to a pat down. Bonilla told Bemis that his passenger was his girlfriend, but could not recall her last name and had only known her for a little while. When Bonilla stated that his driver’s license was in the car, Bemis told him to wait there while Bemis retrieved the license and passenger information. Bonilla then recalled his passenger’s last name and said that he had known her for three years. When Bemis asked the passenger where they were traveling, the passenger stated that they were traveling to “Columbus to visit friends.” Bemis testified that it was at that point that he thought Bonilla’s story “didn’t make sense” and made up his mind that he wanted his dog to conduct a “free-air” sniff of the vehicle.
Bemis returned to his car at approximately 4:07 p.m. to write Bonilla a traffic ticket, run his license through LEADS and NCIC, and call for backup in order to have his dog conduct a sniff of Bonilla’s vehicle. Bemis’s intent was to fill out the citation and then walk the dog around the car. It took approximately eight minutes for the LEADS and NCIC check to be completed. Bonilla was required to lean against the deputy’s car during the time Bemis checked his license and wrote the traffic ticket. Bemis did not let Bonilla re-enter the Avalanche because it had not been searched for weapons. Once the results of the checks came up on the terminal, Bemis remained in his cruiser and continued completing a “Form 16” and a traffic citation for following too closely.
At approximately 4:23 p.m., two backup officers arrived at the scene. Bemis ceased writing the ticket, removed the passenger from the Avalanche, and placed Bonilla and the passenger in separate police vehicles. Bemis had not completed filling out the ticket for Bonilla at this time; he claimed it usually took thirty to thirty-five minutes to issue an out-of-state *695 driver a traffic ticket. Bemis then walked his dog around the vehicle. At 4:25 p.m., the dog alerted to an odor coming from the vehicle. Bemis informed Bonilla that narcotics had been detected. A subsequent search of the vehicle turned up ten kilograms of cocaine.
Bonilla was later indicted for (1) conspiracy to possess with the intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(l)(A)(ii), and 846; (2) possession with the intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(l)(A)(ii); and (3) traveling in interstate commerce with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. Bonilla’s motion to suppress the evidence was denied by the district court.
Bonilla then entered a conditional plea agreement in which he agreed to plead guilty to the conspiracy charge and the other two counts were dropped. He was sentenced to a term of imprisonment of 60 months.
STANDARD OF REVIEW
“This Court reviews a district court’s decision on a motion to suppress the evidence under ‘two complimentary standards. First, the district court’s findings of fact are upheld unless clearly erroneous. Second, the court’s legal conclusion as to the existence of probable cause is reviewed de novo.’ ” United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999) (quoting United States v. Diaz, 25 F.3d 392, 394 (6th Cir.1994)).
DISCUSSION
I. Validity of the Traffic Stop
Bonilla argues that the district court erred in denying his motion to suppress because Bemis did not have probable cause to effectuate the traffic stop. “[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.” United States v. Davis, 430 F.3d 345, 352 (6th Cir.2005) (citing United States v. Bradshaw, 102 F.3d 204, 210 (6th Cir.1996)).
In arguing that the traffic stop lacked probable cause, Bonilla first asserts that Bemis’s and Barrett’s testimonies were not credible. His argument is unpersuasive; the district court found no issue with the credibility of Bemis or Barrett, and neither do we. “We afford the district court’s credibility determinations regarding witness testimony great deference and must uphold its findings of fact unless they are clearly erroneous.” United States v. Es-teppe, 483 F.3d 447, 452 (6th Cir.2007).
Concerning Bonilla’s argument that the initial stop by Bemis was not supported by probable cause even if Bemis’s testimony is considered credible, Bonilla’s argument fails in this respect as well. Probable cause is satisfied when the facts and circumstances within the officer’s knowledge, based on reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. Davis, 430 F.3d at 352. Bonilla was stopped for violating Ohio Rev. Code § 4511.34(A), which provides,
The operator of a motor vehicle ... shall not follow another vehicle ... more closely than is reasonable and prudent, having due regard for the speed of such vehicle ... and the traffic upon and the condition of the highway.
Section 4511.34 requires one ear-length between vehicles for every ten miles per hour of speed. See United States v. Dukes, 257 Fed.Appx. 855, 858 (6th Cir.2007).
Bemis witnessed Bonilla following approximately one car-length behind a Saturn and also following too closely to a *696 tractor-trailer at speeds approaching sixty miles per hour. Although Bemis admitted that he began following Bonilla based on Barrett’s initial observation, his motivation is irrelevant. See Hill, 195 F.3d at 264 (citing Whren v. United States, 517 U.S. 806, 812-13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)) (“[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle.”). Bemis had probable cause to believe a traffic violation had occurred. Since his testimony has not been proven incredible, the evidence supporting the probable cause determination is sufficient.
II. Legality of the Search and Seizure
Bonilla argues that the district court erred in denying his motion to suppress because Bemis lacked the reasonable suspicion of criminal activity required to detain him based on suspicions of illegal drug activity. An officer may stop a vehicle when he has probable cause to believe a traffic violation has occurred. Davis, 430 F.3d at 352. “However, once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.” United States v. Torres-Ramos, 536 F.3d 542, 550 (6th Cir.2008) (citations and internal quotations omitted).
Before we determine whether Bemis had reasonable suspicion to detain Bonilla for drug activity, we must first define the scope of the initial traffic stop. See id. Here, we know the scope of the traffic stop was exceeded at some point because the stop culminated in the arrest of Bonilla for transporting drugs in his vehicle. Thus, we must determine the point at which the original purpose of the traffic stop — writing the traffic citation — ceased and the detainment of Bonilla and his passenger began. Id. Once the scope and duration of the stop is determined, we then focus on whether Bemis had a reasonable and articulate suspicion that criminal activity was afoot at the time of Bonilla’s detention. See id.
A. Scope of the Traffic Stop
In order to remain within the scope of the initial traffic stop, the officer’s actions must reasonably relate to the purpose of the original stop. United States v. Bell, 555 F.3d 535, 541 (6th Cir.2009) (In the absence of reasonable suspicion, “all the officer’s actions must be reasonably related in scope to circumstances justifying the original interference.” (citing United States v. Townsend, 305 F.3d 537, 541 (6th Cir.2002) (internal quotations omitted))). The core question concerning when a traffic stop turns into a Fourth Amendment issue has been framed as: “at what point in time did the purpose of the traffic stop end and the detention of the driver and the [vehicle’s] occupants ... begin?” Torres-Ramos, 536 F.3d at 550.
Requesting a driver’s license, registration, rental papers, running a computer check thereon, and issuing a citation do not exceed the scope of a traffic stop for a speeding violation. Hill, 195 F.3d at 269. “ ‘[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment’s proscription of unreasonable searches and seizures.’ ” Arizona v. Johnson, - U.S. -, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). Moreover, “the use of a well-trained narcotics-detection dog” during a traffic stop does not, in itself, infringe any constitutionally protected privacy interests. Illinois v. Caballes, *697 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).
When the dog made a “hit” during a sniff of the Avalanche, Bemis had the reasonable suspicion necessary to seize Bonil-la and search his vehicle. See Diaz, 25 F.3d at 393-94. However, Bonilla contends that he was detained on suspicion of illegal activity before the dog alerted.
Here, Bonilla was ordered out of the car, patted down, and questioned about where he was going. His passenger was also questioned as to where the two were traveling. Bonilla was required to lean against the cruiser during the entire LEADS and NCIC check of his license, which took approximately seventeen minutes. At 4:07, Bemis called for backup with the intent of running his dog around the vehicle. Upon the arrival of backup at approximately 4:23, Bemis stopped writing the traffic citation, exited his cruiser, removed the passenger from the Avalanche, placed Bonilla and the passenger in different police cruisers, and conducted a sniff with his dog. During the sniff, the dog “hit” and alerted Bemis.
Two recent eases are instructive in determining when the purpose of a traffic stop turns into a detainment. In Torres-Ramos, the purpose of a traffic stop for speeding ended when the driver was placed in the back of a patrol car and the passenger was questioned. 536 F.3d at 551. Once the driver was placed in the patrol car for reasons such as failing to identify the owner of the vehicle he was driving, the court considered the original stop to have ended and a detainment requiring reasonable suspicion to have begun.[2] Id. We held, “[i]ssuing a speeding ticket does not require an officer to detain an individual in order to separately question a passenger regarding ownership or travel plans” and therefore concluded it was at this point that the original purpose of the stop ended. Id.
In United States v. Blair, 524 F.3d 740, 752 (6th Cir.2008), the purpose of a tag-light stop was fulfilled as soon as the officer obtained all the information necessary to write a citation for the violation and no proof of insurance. Thus, as soon as the officer returned to the defendant’s vehicle two minutes later and informed the defendant that a dog would be called to the scene (after consent to search was denied), we held that the remainder of the stop required reasonable suspicion and was in violation of the Fourth Amendment. Id.
The situations in Torres-Ramos and Blair are similar to the instant case where, upon the arrival of backup, Bemis stopped writing the traffic citation, removed the passenger from the vehicle and placed Bonilla and the passenger in the back of cruisers before having his dog perform a sniff. At this point, the officer’s actions ceased being reasonably related in scope to the initial stop, see Bell, 555 F.3d at 541, and any concerns of the original traffic stop were overshadowed by the officer’s suspicions of the contents of the vehicle. From this point, the scope of the initial stop had been exceeded and Bemis was required to have a reasonable suspicion that criminal activity was afoot. See Hill, 195 F.3d at 264.
B. Reasonable Suspicion
The district court held that the totality of the circumstances gave Bemis reasonable suspicion to justify the detention of Bonilla for the minimal amount of time it took him to verify the suspicions he had. However, since Bemis ceased pursuing the original purpose of the traffic stop and *698 began to pursue the suspected drug trafficking activity, he was required to have a “reasonable and articulable suspicion that criminal activity was afoot,” id. (citing United States v. Erwin, 155 F.3d 818, 822 (6th Cir.1998) (en banc)), regardless of how short the detention was. United States v. Urrieta, 520 F.3d 569, 578 (6th Cir.2008) (“Under the Fourth Amendment, even the briefest of detentions is too long if the police lack a reasonable suspicion of specific criminal activity”) (citing Townsend, 305 F.3d at 541, 545).
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the reasonable suspicion framework involves “a two-part analysis of the reasonableness of the stop.” Davis, 430 F.3d at 354. We first determine “ ‘whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articu-lable facts which gave rise to reasonable suspicion.’ ” Id. (quoting United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993)). We make this determination based on the totality of the circumstances. Id. Second, if we conclude that the basis for the stop was proper at its inception, we must then determine “ “whether the degree of intrusion ... was reasonably related in scope to the situation at hand....’” Id. (quoting Garza, 10 F.3d at 1245).
For purposes of the situation at hand, we focus on the first part of the Terry analysis, that is, whether Bemis had reasonable suspicion sufficient to detain Bonil-la at the moment he stopped writing the ticket for the traffic violation and began pursuit of the drug investigation. See United States v. Garrido, 467 F.3d 971, 981 (6th Cir.2006). “Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop.” United States v. Smith, 263 F.3d 571, 588 (6th Cir.2001) (citing Terry, 392 U.S. at 21, 88 S.Ct. 1868).
Here, Bemis decided to detain Bonilla and conduct the dog search based on (1) the information relayed to him by Barrett, including Bonilla’s nervous appearance, the vehicle’s size and out-of-state license plate, (2) Bonilla’s intended destination, (3) Bonilla’s and his passenger’s statements that they were going to “Columbus for vacation” and “Columbus to visit friends,” respectively, and (4) the fact that Bonilla could not initially recall his passenger’s last name or the amount of time he had known her.
The government acknowledges that none of these factors, viewed independently, appear to indicate criminal activity, but it argues that the collective view of these factors rise to the level of reasonable suspicion. One case will seldom provide “useful ‘precedent’ for another” in evaluating reasonable suspicion. Illinois v. Gates, 462 U.S. 213, 238 n. 11, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, we will survey several cases in this circuit and make a reasonable suspicion determination based on a totality of the circumstances. See Torres-Ramos, 536 F.3d at 552-53; Garri-do, 467 F.3d at 982-83.
Although generally included as one of several grounds for reasonable suspicion, a driver’s nervousness when stopped is often common and, therefore, given little weight. See Urrieta, 520 F.3d at 577 (finding “nervousness inherently unsuspicious ”).
Likewise, Bonilla’s destination of Columbus, Ohio is not indicative of illegal activity. See id. at 576-77 (noting that “travel between population centers is a relativity weak indicator of illegal activity because there is almost no city in the country that could not be characterize^] as either a major narcotics distribution center or a city through which drug couriers pass on *699 their way to a major narcotics distribution center”) (internal quotations omitted).
Third, the government argues that the discrepancies between Bonilla’s and his passenger’s travel plans are grounds for reasonable suspicion. Inconsistencies in the claimed purpose of a trip may be grounds for reasonable suspicion. Hill, 195 F.3d at 272. However, in Hill, the discrepancies in travel plans were much more suspicious than in the instant case. There, the defendants provided an implausible explanation for their trip, including multiple conflicting stories about the duration of the trip, illogical inconsistencies about coordinating the trip with a third party (a purported move), and a statement about military moving procedures that the officer knew was suspicious based on his experience. Id. The instant case is distinguishable as the difference between “for vacation” and “to visit friends” is negligible, and it is plausible that the two were traveling to Columbus to accomplish both stated objectives. See Townsend, 305 F.3d at 543 (defendants’ story was not found to be suspicious although the officer thought the defendants were lying about their travel plans).
Lastly, the fact that Bonilla could not remember his passenger’s last name and stated he only knew her for a short time even though she was his girlfriend does raise some red flags, but it does not rise to the level of suspicion of the presence of contraband. See Torres-Ramos, 536 F.3d at 552-53 (summarizing the past decisions of this court with regard to grounds for a reasonable suspicion). At minimum, Bon-illa’s statement was a temporary memory lapse, at most, a lie. Even assuming that Bemis recognized the statement as a lie, Bonilla quickly recanted with truthful information. Further, Bemis testified that although he found Bonilla’s omission of his girlfriend’s name “unusual,” it did not prompt him to want to have his dog conduct a sniff of Bonilla’s vehicle. Bemis testified his suspicions arose after the alleged inconsistency from the passenger about their travel plans to “visit friends.”
Although Bemis had his suspicions, they did not rise to the level required of suspecting Bonilla of criminal activity. As this court held in Bell,
Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that this court has “recognized as valid considerations in forming reasonable suspicion,” they may not together provide reasonable suspicion if “they are all relatively minor and ... subject to significant qualification,” particularly where the “case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases.”
555 F.3d at 540 (citing Townsend, 305 F.3d at 545). The instant case lacks any strong indicators of criminal conduct other than minor actions by Bonilla that are generally present when a driver is pulled over. Bonilla’s failure to promptly provide the officer with his passenger’s correct information was not particularly indicative of criminal activity. Thus, the totality of the circumstances did not give rise to a reasonable suspicion that Bonilla was transporting drugs in his vehicle at the moment when Bemis stopped writing the traffic citation and placed Bonilla and his passenger in police cruisers.
Since we conclude that no reasonable suspicion was present at the inception of the detention on suspicion of transporting drugs, the detention was an unlawful seizure and we do not need to address the second part of the Terry analysis, whether the time and intrusiveness of the stop were reasonable. See Davis, 430 F.3d at 354. The fact that Bemis only detained Bonilla for a short period of time when he ceased *700 writing the ticket and placed Bonilla and his passenger in police cruisers is irrelevant since Bemis lacked reasonable suspicion to do so. Thus, the district court erred in determining Bemis’s detainment of Bonilla for a short period of time was reasonable.
CONCLUSION
REVERSED and REMANDED for further proceedings consistent with this opinion.

. Barrett testified that his suspicions arose because Bonilla was driving a large vehicle with out-of-state tags approximately ten miles per hour under the speed limit and looked nervous. Although Barrett followed Bonilla for approximately sixteen miles, he did not observe any traffic violations.

. There was no constitutional violation in Torres-Ramos, however, because the officer had reasonable suspicion that the driver unlawfully possessed the vehicle he was traveling in. 536 F.3d at 553.