**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0731n.06

**No. 12-1581**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 08, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| OTIS MORRIS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  SILER, CLAY, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge.  Defendant Otis Morris appeals his conviction and sentence for numerous drug trafficking and firearms offenses.  For the reasons that follow, we **AFFIRM**.

**I.**

Morris was convicted of nine different counts that arise out of four distinct encounters with police and a conspiracy lasting more than nine months.  In the first encounter, he was stopped in his car by a Michigan State Police trooper in March 2011 for speeding.  A consent search of the car resulted in the discovery of a loaded handgun.  Next, in April 2011, Morris sold $1,200 worth of cocaine to Jonathan Dix, a police informant, using Jamie VanHoose to deliver the cocaine in exchange for the cash.

Third, in May 2011, Morris was arrested after a van in which he was a passenger was stopped for speeding and following too close; his son, Corey Morris, was the driver.  When the officer

approached the vehicle to get the driver's license and registration, he noticed a large brick of rubber-banded currency in the center console. Based on his training and experience as a narcotics detective, the officer believed the currency could have been narcotics proceeds and immediately called for back-up and a canine unit. After running a background check on Morris and his son, the officer discovered that Otis had several felony narcotics convictions. By the time the officer finished documenting and writing the citations, the canine unit had arrived. When the officer issued the citations, Corey denied that there was a large amount of money in the car. The vehicle was searched after a canine sniff implicated the presence of drugs. The police found cocaine, more than $22,000, and a firearm. Morris was released on bail, but arrested again in May 2011 for the possession of cocaine and crack cocaine. He had been pulled over for driving on a suspended license and failure to use his turn signal. A search of the vehicle led to the discovery of narcotics.

Morris was charged with five counts involving the possession and distribution of either cocaine or crack cocaine, three counts involving firearms, and one count of conspiracy to possess and distribute cocaine. He was found guilty on all counts and sentenced to life imprisonment.

**II.**

On appeal, Morris raises seven issues. First, he argues that the evidence seized from the van should have been suppressed at trial because the police officer did not have reasonable suspicion to continue to detain the occupants of the van after he issued the traffic citations. Second, he contends that the district court committed reversible error when it did not declare a mistrial after the prosecutor improperly commented on his right not to testify. Third, he asserts that the court erred when it allowed the government to elicit testimony regarding prior bad acts under the guise of

background information. Fourth, he contends that the government created a fatal variance between the indictment and the evidence presented at trial when it proved multiple conspiracies at trial. Fifth, he asserts that the government presented insufficient evidence at trial on the weapons charges. Sixth, he argues that his life sentence violates the Eighth Amendment to the United States Constitution. Lastly, he contends that the obstruction of justice enhancement was improper.

## A. Motion to Suppress

Morris argues that the traffic stop of the van was completed when the officer issued Corey the traffic citations and that the officer lacked reasonable suspicion to prolong the stop long enough to conduct the canine sniff. The district court found that the traffic stop ended when the officer handed and explained the citations to Corey, but was followed by a "consensual encounter" between Corey and the officer. The court further found that a *Terry* stop began when the officer directed Corey to move 50 feet in front of the vehicle. It concluded that there was reasonable suspicion to conduct the *Terry* stop based on three pieces of information that the officer obtained prior to the beginning of the *Terry* stop: (1) the large brick of rubber-banded currency; (2) Morris's drug related prior convictions; and (3) Corey's lie that there was not a large sum of money in the vehicle. Lastly, the court concluded that the five-minute delay between the beginning of the *Terry* stop and the initiation of the canine sniff was reasonable and sufficiently limited.

In reviewing the district court's denial of the motion to suppress, we review factual findings for clear error and conclusions of law *de novo*. *United States v. Garcia*, 496 F.3d 495, 502 (6th Cir. 2007). "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable

suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

We determine "whether an officer formed the requisite reasonable, articulable suspicion during a

traffic stop under a 'totality of the circumstances' analysis." *United States v. Smith*, 263 F.3d 571,

588 (6th Cir. 2001).

Morris does not argue the law or the facts as found by the district court. He specifically

argues that the three pieces of information legally gathered by the officer do not collectively amount

to reasonable suspicion. He cites *United States v. Bonilla*, 357 F. App'x 693 (6th Cir. 2009), to

support his assertion. In *Bonilla*, we held that the officer in a traffic stop did not have the requisite

reasonable suspicion to detain the occupants of the vehicle in order to perform a canine sniff when

the officer had ceased to pursue the initial purpose of the traffic stop. *Id.* at 699-700. There the

defendant was detained based on four pieces of information: (1) his nervous appearance; (2) his

intended destination, Columbus, Ohio; (3) his statement that they were going to Columbus "for

vacation," while his passenger said it was "to visit friends;" and (4) his initial failure to recall his

passenger's last name or the amount of time he had known her. *Id.* at 698.

The circumstances and reasons for the *Terry* stop here were considerably different. The facts

here are more akin to those in *United States v. Erwin*, 155 F.3d 818 (6th Cir. 1998), where we found

reasonable suspicion to detain the occupant of a vehicle in order to conduct a further investigation

after the initial purpose of the traffic stop had ended. *Id.* at 822-23. Reasonable suspicion existed

based on eight different facts including a large amount of cash visible in the vehicle, no proof of

insurance, a criminal record of drug violations, and nervousness. *Id.* at 822. Here, in addition to

having a large amount of cash in the vehicle, the officer noticed that it was folded, stacked, and

bound in a particular way, which, based on his twenty-three years of experience as a narcotics detective, he believed was possibly narcotics proceeds. Further, the driver lied about its existence when asked. Although the district court did not rely on it, Corey's failure to provide proof of insurance, the fact that the car belonged to someone other than the occupants, and the reason for the traffic stop in the first place, speeding and following too close to multiple vehicles, could have been listed as additional reasons to support reasonable suspicion. Thus, the officer had a "reasonable and articulable suspicion that criminal activity was afoot." *Hill*, 195 F.3d at 264.

Lastly, to the extent Morris argues that five minutes was too long to get each of the occupants far enough away from the vehicle in order to perform the canine sniff, this argument is without merit. *See United States v. Davis*, 430 F.3d 345, 354-55 (6th Cir. 2005) (holding that thirty to forty-five minutes is a reasonable amount of time to obtain a drug-sniffing dog where there was reasonable suspicion that the vehicle contained narcotics).

### B.     Alleged Prosecutorial Misconduct

Morris next argues that the district court committed reversible error when it failed to declare a mistrial after the prosecutor improperly commented on his right to testify. The government contends that while the statements in question were improper, they were not flagrant, and the district court did not abuse its discretion in denying Morris's request for a mistrial.

During the first day of trial, the government objected to the cross-examination of one of the government witnesses on hearsay grounds. In his objection, the prosecutor told the court that "[i]f [the defendant] wants to offer his explanation, [he] can testify." The court overruled the government's objection, but moments later the prosecutor objected again, arguing to the court that

the testimony was "hearsay, and [the defendant] has to testify." Morris's counsel argued to overrule the objection and stated "[y]ou can't force Mr. Morris to testify." The court again overruled the government's objection and allowed the testimony. Morris's counsel made no contemporaneous objection, motion for a mistrial, or request for a curative instruction based on the prosecutor's comments. Two days later, at the beginning of the third day of trial, Morris submitted a motion for a mistrial on several grounds, including the comments made by the prosecutor regarding his Fifth Amendment right not to be compelled to testify. The district court denied the motion on all grounds.

Although the district court ruled on the merits of Morris's argument, it specifically noted that "defense counsel made no objection at the time, and the first time that the Court understood that this was going to be an issue was this morning." Because Morris failed to timely object to the comments, his claim of error is reviewed only for plain error. *See United States v. Cruz,* 156 F.3d 22, 28-29 (1st Cir. 1998) (the defendant's claim reviewed for plain error where he objected to statements made by the prosecutor in his closing rebuttal only after the trial judge had called a recess prior to charging the jury); *United States v. Johnson*, 767 F.2d 1259, 1274-75 (8th Cir. 1985) (the defendant's claim reviewed for plain error where he moved for a mistrial seven days after comments made by the prosecutor in his opening statement).

In order to find that the prosecutor improperly commented on Morris's Fifth Amendment right to remain silent, we must find either that the prosecutor's manifest intent was to comment on Morris's failure to testify, or that the remark was of such a character that the jury would necessarily take it to be a comment on his failure to testify. *United States v. Ursery*, 109 F.3d 1129, 1134 (6th Cir. 1997). Under the second standard, four factors are considered: (1) whether the prosecutor

intended to reflect on the defendant's failure to testify; (2) whether the comment was isolated or extensive; (3) whether the case against the defendant was otherwise overwhelming; and (4) whether curative instructions were given and when. *Id.* at 1135.

Morris's claim fails under both standards. First, the prosecutor was speaking directly to the judge, not the jury, in an effort to explain his objection. Under these circumstances, it is not apparent that the prosecutor's manifest intent was to comment on Morris's failure to testify, especially considering that Morris had yet to have the opportunity to testify. Under the second standard, all four factors weigh against Morris: the prosecutor lacked intent; the comments were isolated; the evidence against Morris was strong; and, although the court did not give an instruction at the time the comments were made, in denying Morris's motion for a mistrial, it offered to give a curative instruction. Morris did not request a curative instruction, but the court gave its usual instruction to the jury regarding the government's burden of proof and the defendant's absolute right not to testify. Thus, Morris cannot show error, much less plain error, under either of these standards.

## C. Background Evidence

Morris next argues that the court erred when it allowed the government to elicit testimony regarding prior bad acts under the guise of background information. He specifically alleges that the district court admitted evidence from Erin Hopkins, Jonathan Dix, and Jamie VanHoose that pre-dated each of the charged offenses and thus was improper. He further argues that the court should have given a limiting instruction for the admitted evidence.

The admission of evidence is normally reviewed for an abuse of discretion, but "there is an intra-circuit conflict over how best to review Rule 404(b) evidence." *United States v. De Oleo*, 697

F.3d 338, 343 (6th Cir. 2012). In reviewing the admissibility of evidence under Rule 404(b) of the Federal Rules of Evidence, we review three factors: "(1) whether the other acts actually occurred; (2) whether they were admissible for a permissible Rule 404(b) purpose; and (3) whether the district court correctly determined that the acts' probative value was not substantially outweighed by the danger of unfair prejudice." *Id.* However, evidence that is not admissible as Rule 404(b) evidence may be admissible as background evidence. *Id.* at 344. "Background evidence is a narrow category of evidence that typically provides context for the jury, either because it is directly probative, acts as a prelude to the offense or arises from the same events, forms an integral part of the witness's testimony, or completes the story of the offense." *Id.*

Regardless of the intra-circuit split regarding the standard of review, Morris's claim that improper evidence was elicited from Hopkins is reviewed only for plain error because he failed to object to the testimony in dispute. *United States v. Marrero*, 651 F.3d 453, 470-71 (6th Cir. 2011). Morris asserts that Hopkins testified about buying cocaine from him approximately five years before trial, outside the dates of the charged offenses. Hopkins actually testified about her friend buying cocaine from Morris around that time. Morris's counsel raised no objections to this testimony. Morris further asserts that Hopkins testified that she saw Morris with a half kilogram of cocaine three or four years before trial, again outside the dates of the charged offenses. However, not only did Morris's counsel fail to object to this testimony, he further developed it on re-cross examination. The testimony here meets the definition of background evidence because it was elicited to show how Hopkins first met Morris and as such, formed an integral part of her testimony. Thus, the district court did not commit plain error in admitting Hopkins's testimony.

With respect to VanHoose, Morris fails to cite to the record where specific testimony was received regarding bad acts outside of the indictment period. Moreover, Morris never objected to any testimony from VanHoose on these grounds. Thus, this argument is rejected for lack of any error.

With respect to Dix, Morris's argument is rejected under *de novo* review. At the beginning of Dix's testimony, the prosecutor asked him how he came to know Morris. He testified that they became close around 2004 to 2006, that Morris began to sell him cocaine around that time, and that he continued buying cocaine from Morris through April 2011. The district court overruled Morris's objection and later denied his motion for a mistrial by ruling that the testimony was limited and was proper background testimony. We agree and reject Morris's argument. The testimony here meets the definition of background evidence because it was limited and elicited to show how Dix first met Morris and as such, formed an integral part of his testimony.

Lastly, to the extent Morris argues that the district court erred by not giving a limiting instruction, we find no error where Morris failed to object. Further, any error for failing to give a limiting instruction for Dix's testimony, which was not requested by Morris, was harmless. *Cf. United States v. Hardy*, 228 F.3d 745, 751 (6th Cir. 2000) (finding improperly admitted Fed. R. Evid. 404(b) evidence to be harmless in light of the overwhelming evidence against the defendant).

**D.     Variance**

Morris next argues that there was a fatal variance between the evidence presented at trial and the conspiracy charge in the indictment. Specifically, he argues that while the government alleged

one drug conspiracy, it proved multiple unrelated conspiracies at trial. Although Morris asserts that he raised this issue at trial, a review of the record indicates otherwise.

Morris made two arguments in his motion and supporting brief for a mistrial, neither of which matches this specific claim on appeal. Although he did argue that during the course of the trial there had "been a certain variance" between the proofs and the indictment, a full reading of the transcript fails to show the specific argument that Morris makes here—that the government proved multiple unrelated conspiracies even though it only charged one conspiracy. Therefore, we review this claim only for plain error. *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006).

A variance occurs when "the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* "Within the context of a conspiracy, a variance constitutes reversible error only if a defendant demonstrates that he was prejudiced by the variance and that the 'indictment allege[d] one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies.'" *Id.* at 235-36 (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982)).

Count one alleged that Otis Morris, Eric Foster, and Corey Morris "did knowingly, intentionally and unlawfully combine, conspire, confederate and agree together and with other persons, both known and unknown to the grand jury, to distribute and posses with intent to distribute five kilograms or more of . . . cocaine." Morris argues that the evidence showed that there were multiple unrelated conspiracies and that a mere buyer-seller relationship does not prove a conspiracy. He contends that the testimony by Foster regarding Jackie Close involved a separate conspiracy.

Morris is correct in his assertion that a mere buyer-seller relationship does not prove a conspiracy. *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). Therefore, the buyer-seller relationships between Foster and his customers and Morris and his customers cannot be separate conspiracies without further evidence. Moreover, the evidence showing that Foster and Morris had customers helped prove their intent to distribute the cocaine. Lastly, Foster's testimony regarding Close's involvement showed that Morris, Foster, and Close had made prior trips to Chicago to buy cocaine. This testimony fits squarely into the indictment, as it includes "other persons" besides Morris, his son, and Foster. Accordingly, we find Morris's argument here to be meritless.

### E. Sufficiency of the Evidence

Morris was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He was also convicted of possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i). He argues that there was insufficient evidence on these counts. Specifically, he contends that the government failed to prove that the firearms in question were operable, or were capable of being readily restored.

We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). Viewing the evidence in the light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

The term "firearm" means any weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). "[A] firearm need not be operable to satisfy the definition of firearm for purposes of 18 U.S.C. § 924(c)."

*United States v. Bandy*, 239 F.3d 802, 805 (6th Cir. 2001). A jury can reasonably conclude that a weapon is capable of firing a projectile, or at least that it had been designed for that purpose, where the jury has the actual weapon before it and there is testimony that the weapon was loaded when it was recovered by the police. *United States v. Forrest*, 402 F.3d 678, 686-87 (6th Cir. 2005).

Here, both Michigan State Police troopers testified that the weapons were loaded when seized from Morris. Moreover, both weapons were admitted into evidence and examined by the jury. Thus, we find Morris's argument to be without merit.

### F. Eighth Amendment Challenge

Morris next argues that his life sentence, the result of a sentence enhancement under 21 U.S.C. §§ 841(b)(1)(A)(ii) & 851(a)(1), violates the Eighth Amendment to the U. S. Constitution. He contends that his age, poor health, and three honorable years of service in the United States Army make his sentence cruel and unusual. However, enhancements under 21 U.S.C. §§ 841(b)(1)(A) & 851(a)(1) do not violate the Eighth Amendment. *See United States v. Graham*, 622 F.3d 445, 452-54 (6th Cir. 2010). Accordingly, we reject Morris's argument.

### G. Obstruction of Justice Enhancement

Morris finally argues that the obstruction of justice sentence enhancement was improper. He contends that it was improper because the fabricated narrative Corey told police, and continued to tell for months, was concocted and agreed to by all three occupants of the van (Morris, his son, and Foster). The district court found that Morris had told his son to lie about the purpose of their trip to Chicago when they were stopped in the van. Thus, the court added two levels to his offense level pursuant to the enhancement in USSG § 3C1.1.

The district court's factual findings in determining a sentencing guideline range are reviewed for clear error, but legal conclusions are reviewed *de novo*. *United States v. Thompson*, 586 F.3d 1035, 1038 (6th Cir. 2009). Morris argues that contradictory testimony given by Foster, indicating that they all came up with the story together and mutually agreed to stick to it, should be credited over Corey's testimony. We find no clear error in the district court's factual findings here, as Morris makes no argument as to why Foster's testimony should be credited over Corey's testimony.

Additionally, any error here is harmless because Morris was sentenced to a statutorily mandated life sentence, which was unaffected by the application of the obstruction of justice enhancement.

**AFFIRMED**.