NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0288n.06

Case No. 14-1526

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 16, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STEVEN D. DENT, aka James Walker, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. Steven Dent appeals the denial of his motion to suppress evidence discovered following a traffic stop. Finding no error, we AFFIRM.

I.

On March 15, 2007, Michigan State Trooper Matthew Unterbrink stopped Dent on Interstate 69 for what he believed to be a defective headlight on Dent's GMC Yukon. Although the sun had risen almost ninety minutes before the stop, many vehicles on the road had their headlights on due to what Unterbrink described as "gloomy" weather. Unterbrink saw through his side-view mirror that a passenger-side light on Dent's truck was not functioning. During the stop, Dent handed Unterbrink a Michigan driver's license bearing the name "James Walker" and vehicle registration in the name of "Steven Duane Dent." Another trooper, Ben Bordner, arrived

and radioed for a background check of both names. Unterbrink asked Dent to step out of the truck while waiting for the background check. Dent consented to a pat-down search but refused to let the officers search his vehicle.

When the background check suggested that "James Walker" was an alias for "Steven Duane Dent," Unterbrink and Bordner had a third trooper review the driver's license images of Walker and Dent. After the third trooper confirmed the images were of the same man, Unterbrink and Bordner arrested Dent for providing false information regarding his identity. Approximately thirty minutes passed between the initial stop and Dent's arrest. The officers searched Dent's truck after taking him into custody and found a duffle bag containing thirteen kilograms of cocaine.

Upon closer inspection, Unterbrink learned that the defective light was a daytime running light located directly below the Yukon's main headlights. Michigan law does not prohibit operating a vehicle with a defective daytime running light.

After the government indicted Dent for conspiracy to distribute the cocaine, Dent moved to suppress the fruits of the traffic stop. The district court denied the motion, finding the initial traffic stop lawful and the length of detention reasonable. Dent then pleaded guilty, but reserved the right to appeal the denial of his suppression motion. The court sentenced him to 240 months' imprisonment, and Dent appealed.

II.

Dent argues that Unterbrink lacked probable cause to stop him because Michigan law prohibits operating a vehicle with defective headlights, not daytime running lights. He also

contends that the officers unreasonably extended the length of the stop. We review the district court's legal conclusions de novo and its factual findings for clear error, considering the evidence in the light most favorable to the government. *United States v. Pritchett*, 749 F.3d 417, 435 (6th Cir. 2014).

Though Unterbrink mistakenly believed Dent's vehicle had a defective headlight, "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake." *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014). The district court credited Unterbrink's testimony that he, in fact, mistook the daytime running light for a headlight and found that mistake reasonable. Dent attacks this ruling in three ways, all unavailing. First, he suggests that Unterbrink's "brief glimpse" of the Yukon in his side-view mirror "cannot possibly be sufficient to establish probable cause for a traffic stop." But he fails to cite any authority to support this categorical statement or explain why Unterbrink would necessarily need more than a brief glimpse to observe a burnt-out light.

Second, Dent asserts that Unterbrink also lacked probable cause to stop him because Michigan law does not prohibit operating a motor vehicle with defective headlights during daylight hours. As the district court noted, however, "[t]he [relevant] statute does not limit an officer's ability to pull over a vehicle for a broken headlight only at those times when the headlights are required to be on." *See* Mich. Comp. Laws § 257.683(1) ("A person shall not drive . . . a vehicle . . . [that] is not *at all times* equipped with lamps and other equipment in proper condition . . . ." (emphasis added)).

Third, pointing to aspects of Unterbrink's testimony he claims are either inconsistent or suspicious, Dent argues that the district court erred in crediting Unterbrink's statement that he

mistook the running light for a headlight. He contends that the court should have rejected Unterbrink's testimony and credited the "much more believable scenario that Unterbrink in fact saw that the defective light was the smaller light, and decided to stop Mr. Dent based on a belief that it was an equipment defect for which Mr. Dent could be cited." But Dent fails to persuade us that the court erred either in accepting Unterbrink's version of events or in concluding that his mistake was reasonable. He does not contest that most vehicles had their headlights on that morning or that his passenger-side running light was missing a bulb at the time. And given the size and placement of the daytime running lights directly below the Yukon's headlights, we cannot say the court erred in finding Unterbrink's mistake reasonable.

Dent further argues that, even if the initial stop was legal, the officers unreasonably extended the stop in order to obtain information over the police radio that would allow them to search his vehicle. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But "[i]n a traffic stop, an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop." *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009) (internal quotation marks omitted). Here, Unterbrink and Bordner radioed the station to run Dent's information because their cruisers were not equipped with computers. "[A]ny time that the [troopers] spent in pursuing other matters while the background check was processing, even if those matters were unrelated to the original purpose of the stop, did not extend the length of the stop." *Id.* at 542. And the information suggesting that James Walker was an alias of Steven Dent justified

prolonging the stop in order to confirm the officers' suspicion. We therefore agree with the district court that "the length of the stop was reasonable given the circumstances in this case."

III.

We AFFIRM the district court's judgment.[1]

---

[1]Dent also moves to strike the government's appellate brief because it cites materials not expressly admitted during the suppression hearing. But as the government notes, the materials it cites were part of the record when the court issued its ruling. Dent's motion is denied.