# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 19, 2016

Plaintiff-Appellee,

v

No. 323727
Branch Circuit Court
LC No. 07-048753-FC

STEVEN DUANE DENT, a/k/a JAMES
WALKER,

Defendant-Appellant.

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(*i*); resisting and obstructing a police officer, MCL 750.81d(1); and providing false identification, MCL 257.324(1)(a). The trial court sentenced defendant to 270 months to 40 years' imprisonment for possession with intent to deliver, 16 to 24 months' imprisonment for resisting and obstructing, and 90 days in jail for providing false identification. We affirm defendant's convictions, but remand for proceedings consistent with this opinion.

Defendant argues that the trial court erred in denying his motion to suppress the evidence obtained after a traffic stop, i.e., approximately 13 kilograms of cocaine, on the grounds that (1) the initial stop was unconstitutional and (2) he was detained for an unreasonable length of time. We disagree.

"A trial court's findings of fact on a motion to suppress are reviewed for clear error, while the ultimate decision on the motion is reviewed de novo." *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). Questions of statutory interpretation are reviewed de novo. See *People v Zubke*, 469 Mich 80, 83; 664 NW2d 751 (2003).

> The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures.

\* \* \*

-1-

An investigatory stop, which is limited to a brief and nonintrusive detention, constitutes a Fourth Amendment seizure. In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law. The reasonableness of an officer's suspicion is determined on a case-by-case basis in light of the totality of the facts and circumstances and specific reasonable inferences he is entitled to draw from the facts in light of his experience. [*People v Jones*, 260 Mich App 424, 428-429; 678 NW2d 627 (2004) (quotation marks and citations omitted).]

See also *People v Dillon*, 296 Mich App 506, 509; 822 NW2d 611 (2012) ("A court is required to suppress evidence otherwise lawfully seized during a traffic stop only if the officer did not have reasonable suspicion to justify the stop."). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v Bloomfield*, 40 F3d 910, 915 (CA 8, 1994).[1]

Michigan State Police Trooper Matthew Unterbrink testified at the evidentiary hearing on defendant's motion that he stopped defendant's vehicle on I-69 during daylight hours because he believed that the vehicle had a headlight out. It was later revealed that the non-operational light was actually a "daytime running light" and that defendant's headlights had been turned off. Defendant argues that Michigan law does not require two working headlights during daylight hours and, therefore, Unterbrink could not have had reasonable suspicion to stop his vehicle.

MCL 257.685(1) requires all motor vehicles to "be equipped with at least 2 head lamps with at least 1 head lamp on each side of the front of the vehicle . . . ." MCL 257.699(1)(a) requires those head lamps to "in all cases emit a white light." MCL 257.683(1) provides in part that, "A person shall not drive . . . on a highway a vehicle . . . that . . . is not *at all times* equipped with lamps and other equipment in proper condition and adjustment as required in sections [MCL 257.]683 to 711." (Emphasis added.) Accordingly, Michigan law requires that all motor vehicles driven on public highways must be equipped *at all times* with two working headlights, and operating a motor vehicle on a public highway at any time with only one working headlight is a civil infraction. MCL 257.683(6). Thus, the trial court did not err in ruling that driving without two working headlights, even during daylight hours, is a traffic infraction sufficient to allow a law enforcement officer to stop a motor vehicle. *Bloomfield*, 40 F3d at 915.

In determining whether the traffic stop was legal, the question is not whether defendant was actually violating the law, but whether, under the totality of the facts and circumstances, Unterbrink had a reasonable suspicion that defendant was in violation of the law. *Jones*, 260 Mich App at 428-429. We conclude that the trial court did not clearly err in finding that Unterbrink had such a reasonable suspicion. The trial court credited Unterbrink's testimony that he believed defendant had a headlight out, a determination to which this Court defers. See *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). Moreover, in viewing the

---

[1] Although not binding precedent, lower court federal decisions may be deemed helpful in deciding issues before this Court. See *People v Hyde*, 258 Mich App 428, 443; 775 NW2d 833 (2009).

pictures of the front of defendant's vehicle admitted at the hearing, the daytime running lights and headlights are located very close to each other and appear to emit the same color of light. Unterbrink's brief glance, through a rearview mirror, of a vehicle presumably traveling at highway speed, was unlikely to reveal which of the two lights was actually out. Unterbrink testified that he saw a vehicle with one headlight on and one headlight off. If the non-operational light was a headlight, defendant would have been in violation of Michigan law. Accordingly, the trial court did not clearly err in finding that Unterbrink had a reasonable suspicion that defendant was committing a traffic infraction sufficient to justify the initial traffic stop.

Defendant's argument to the contrary relies on MCL 257.684(a), which provides in part:

> Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles . . . .

The parties appear to agree that, at the time defendant's vehicle was stopped, motorists were not required to have their headlights on pursuant to this statute. However, as discussed, the Motor Vehicle Code requires that motor vehicles, at all times, have two headlights capable of emitting white light. Unterbrink believed that defendant's vehicle did not have equipment capable of performing this task, which would constitute a civil infraction sufficient to allow him to stop defendant's vehicle. By contrast, defendant would have violated MCL 257.684(1) if he were required to have his headlights on because of the time of day, but did not. Defendant was stopped for suspicion of violating MCL 257.683(1), which requires motor vehicles to possess two working headlights at all times. Unterbrink acknowledged that it was ultimately revealed that he was factually mistaken that defendant had a headlight out and that only a daytime running light was out. However, after reviewing the record, the trial court did not clearly err in its implied conclusion that Unterbrink's mistake of fact was reasonable, and such a reasonable mistake does not render a traffic stop violative of the Fourth Amendment. See *Heien v North Carolina*, ___ US ___; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014). Accordingly, the trial court did not err in denying defendant's motion to dismiss on the grounds that the initial traffic stop was unlawful.

Defendant also argues that he was detained longer than necessary to investigate his allegedly deficient headlight and, therefore, the recovered evidence must be suppressed. We disagree.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v United States*, ___ US ___; 135 S Ct 1609, 1614; 191 L Ed 2d 492 (2015) (quotation marks and citations omitted). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Id*. However, if some independent reasonable suspicion that criminal activity is afoot arises, prolonging the detention to investigate the new suspicion is appropriate. *Id*. at 1614-1617; *People v Lewis*, 251 Mich App 58, 70-73; 649 NW2d 792 (2002). "[A]n officer is free to ask traffic-related questions, and questions about a driver's identity, business and travel plans during the course of a traffic stop."

*United States v Hill*, 195 F3d 258, 268 (CA 6, 1999) (quotation marks and citation omitted). "In a traffic stop, an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop." *United States v Bell*, 555 F3d 535, 541 (CA 6, 2009) (quotation marks and citations omitted).

As discussed, Unterbrink's initial stop of defendant was lawful. As part of that lawful stop, Unterbrink was allowed to request defendant's driver's license and registration and conduct radio checks of them. At the evidentiary hearing, Unterbrink testified that he went to arrest defendant, and thus end the traffic stop, when he learned over the radio that defendant had likely presented him with false identification. In other words, based on Unterbrink's testimony at the evidentiary hearing, defendant was not detained longer than it took Unterbrink, and his colleagues, to conduct radio checks. Such checks are explicitly "within the bounds of the initial stop." *Id*. There is no indication in the record that law enforcement personnel delayed the checks or otherwise extended the stop beyond time required to conduct the allowable radio checks. Accordingly, the trial court did not clearly err in finding that defendant's detention was not of an unreasonable length nor err in denying his motion to suppress on this basis.[2]

Defendant next argues on appeal that the trial court erred in denying his motion to dismiss count I of the information, possession with intent to deliver, on statutory double jeopardy grounds. We disagree.

Generally, this Court reviews for an abuse of discretion a trial court's decision on a motion to dismiss. *People v Adams*, 232 Mich App 128, 132; 591 NW2d 44 (1998). However, "[w]e review de novo a trial court's decision that involves statutory interpretation [of MCL 333.7409]." *Zubke*, 469 Mich at 83.

Defendant was found guilty by the trial court of possession with intent to deliver and scheduled for sentencing on November 21, 2008. Defendant failed to appear and remained at large until 2012. In March 2010, defendant was indicted on the federal charge of conspiracy to distribute more than five kilograms of cocaine, 21 USC 841(a)(1); 21 USC 846; arising from the subject traffic stop. Defendant pleaded guilty to this charge in 2014 and was sentenced to 20 years in federal prison.[3] The trial court finally sentenced defendant October 2014.

---

[2] We reject defendant's argument that Unterbrink was motivated to stop and arrest him solely because he is African-American. There is simply no evidence in the record to support defendant's racial profiling accusation and, in any event, Unterbrink's subjective motivations are irrelevant to the instant inquiries. *Whren v United States*, 517 US 806, 812-813; 116 S Ct 1769; 135 L Ed 2d 89 (1996).

[3] See *United States v Dent*, 599 Fed Appx 584 (CA 6, 2015).

[4] *United States v Crosby*, 397 F3d 103 (CA 3, 2005).

MCL 333.7409 provides:

> If a violation of this article [i.e., the controlled-substances act] is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

Defendant is not entitled to relief under this statute for two reasons. First, defendant created the potential for error by failing to appear for his scheduled sentencing. Had defendant appeared and been sentenced on that date, approximately 14 months before his federal indictment, there could not possibly have been a federal conviction for the same act prior to the completion of state trial court proceedings. Second, when defendant was convicted of possession with intent to deliver, his "prosecution" was complete; all that remained was the sentencing phase. Because sentencing is not part of the "prosecution," the statute does not serve as a bar to defendant's state sentence for possession with intent to distribute. See *People v Washington*, 461 Mich 294; 602 NW2d 824 (1999) (holding that a defendant is not entitled to relief under MCL 333.7409 when he created the potential for error by failing to appear for sentencing, and that the "prosecution" of a defendant is complete when he is convicted of the subject charge, not when he is sentenced).

Finally, defendant argues that he is entitled to a *Crosby*[4] remand in light of our Supreme Court's opinion in *People v Lockridge*, 498 Mich 358; ___ NW2d ___ (2015).[5] We agree.

Because defendant raised his *Lockridge* argument at sentencing, his claim "is subject to the harmless beyond a reasonable doubt test." *People v Terrell*, ___ Mich App ___; ___ NW2d ___ (September 29, 2015; Docket No. 321573), slip op at 8.

In *Lockridge*, 498 Mich at 364, the Supreme Court held that recent United States Supreme Court decisions apply "to Michigan's sentencing guidelines and render[] them constitutionally deficient." That is, "to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Id.* at 373-374. Accordingly, the Supreme Court held that the sentencing guidelines are advisory only, but that a trial court must still "determine the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 365.

In *Terrell*, slip op at 9-10, this Court held that, "regardless of the fact that judicial fact-finding did *not* increase defendant's minimum sentence guidelines range, the trial court's compulsory use of the guidelines was erroneous in light of *Lockridge*." Such is the case here; defendant's minimum sentence range was not altered by impermissible judicial fact-finding

---

[5] We reject the prosecution's argument that defendant is precluded from arguing *Lockridge* because he would not have been able to do so had he appeared at his originally scheduled sentencing in 2008.

because defendant's conviction for possession with intent to deliver 1,000 or more grams of cocaine provided sufficient facts to score 100 points under OV 15, placing defendant at OV Level VI. MCL 777.62. Nonetheless, because the guidelines were mandatory when the trial court sentenced defendant, under *Terrell*, a *Crosby* remand consistent with the procedure described in *Lockridge* is required. *Id*.

Defendant's convictions are affirmed. With regard to defendant's sentences, we remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey