*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                        No. 06-4413

        *v.*

CLARENCE BELL, III,
                    *Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-00091—John R. Adams, District Judge.

Argued: January 20, 2009

Decided and Filed: February 17, 2009

Before: MOORE, CLAY, and KETHLEDGE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Matthew D. Besser, ELFVIN & BESSER, Cleveland, Ohio, for Appellant.
Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for
Appellee. **ON BRIEF:** Matthew D. Besser, ELFVIN & BESSER, Cleveland, Ohio, for
Appellant. Thomas M. Bauer, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio,
for Appellee.

————————————

**OPINION**

————————————

        KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Clarence Bell, III

appeals the district court's denial of his motion to suppress evidence obtained during a traffic

stop. After Bell was pulled over for speeding, a drug-detection dog alerted to Bell's vehicle,

and a subsequent search of the vehicle revealed four bags containing crack cocaine. Bell

was indicted on one count of possessing with intent to distribute 50 grams or more of a

mixture or substance containing a detectable amount of cocaine base (crack) in violation of

1

21 U.S.C. § 841(a)(1), (b)(1)(A).  After the district court denied Bell's motion to suppress, Bell pleaded guilty to the count alleged, but reserved his right to appeal the denial of the motion to suppress.  On appeal, Bell argues that the district court erred in denying his motion because the officers ceased diligently pursuing the purpose of the initial stop without reasonable suspicion of drug activity.  Because we conclude that Bell's seizure was not unreasonably prolonged beyond the purposes of the initial stop, we **AFFIRM** the district court's denial of the motion to suppress.

## I.  BACKGROUND

On February 1, 2006, Trooper Todd Roberts and Sergeant Terry Helton of the Ohio State Highway Patrol (collectively, "the Officers") were monitoring traffic on Interstate 80.  At approximately 12:57 p.m.,[1] the Officers clocked Bell's speed with a laser device at 80 miles per hour in a 65-mile-per-hour zone.  After Bell pulled over, Trooper Roberts approached the vehicle and asked Bell for his license, proof of insurance, and vehicle registration.  Bell informed Trooper Roberts that he was driving a rental car and handed Trooper Roberts his driver's license and the rental agreement.  Trooper Roberts testified that, when looking for the rental agreement, Bell "was moving very fast towards the glove box, and then he reached up towards the visor."  Joint Appendix ("J.A.") at 38 (Roberts Test. at 11).  Trooper Roberts informed Bell of the reason for the stop and asked him where he was going.  Bell stated that he was traveling from Detroit to Cleveland to pick up his aunt to bring her back to Detroit for a funeral.  According to Trooper Roberts, Bell's story "sounded rehearsed" because "he repeated that story several times" and "he said it the exact same way each time, or very similar to the way he said it before."  *Id*.  Trooper Roberts also noted that Bell "had a cell phone laying in his lap as if he was waiting to call someone, or he had his hands on the cell phone when he wasn't moving," *id*., and that Bell "didn't make any specific eye contact with [Trooper Roberts] while [Bell] was speaking," J.A. at 39 (Roberts Test. at 12).  Trooper Roberts found Bell to be "overly cooperative," which Roberts thought was abnormal.

---

[1]The video of the stop, taken from Trooper Roberts's patrol car, shows the time of the stop as 2:17 p.m.  Although the timestamp on the video was one hour and twenty minutes ahead, the timer accurately reflects the minutes that passed on the video.  All citations to the video refer to the timestamp.

J.A. at 50 (Roberts Test. at 23).  Overall, Trooper Roberts thought that Bell "just seemed very deceptive in the things he was doing."  J.A. at 39 (Roberts Test. at 12).

Roberts then returned to his patrol car and immediately began a computer check of Bell's license.  While waiting for the results of the background check, Trooper Roberts and Sergeant Helton discussed Trooper Roberts's interactions with Bell.  Trooper Roberts told Sergeant Helton that Bell did not seem nervous, but did sound rehearsed.  Sergeant Helton asked Trooper Roberts if he wanted Helton to call "Bob," referring to Trooper Robert Farabaugh, the canine handler who was nearby.  At approximately three minutes into the stop, Sergeant Helton radioed for the police dog to come to the scene.  J.A. at 183 (Video at 14:20:50-58).  Sergeant Helton also advised Trooper Roberts that he should get Bell out of the car so that they would not have to worry about doing so when the dog handler arrived.  J.A. at 183 (Video at 14:22:17-20).

The Officers also discovered that the rental agreement was not in Bell's name, but the car was rented instead to a Laticia Kelley.  They noticed that the rental agreement did not allow additional drivers without prior written approval.  J.A. at 183 (Video 14:21:08-41).  Sergeant Helton instructed Trooper Roberts to go back to the vehicle and ask Bell about the rental agreement.  J.A. at 183 (Video at 14:23:23-29).  Trooper Roberts then approached Bell's vehicle and asked if Bell had written permission from Avis, the rental company, to operate the vehicle.  Bell replied that his girlfriend, whose name was on the rental agreement, had called Avis and obtained permission over the phone for Bell to operate the vehicle, but that he did not have written permission.  Trooper Roberts then returned to the patrol car, at which time he completed the computer check on Bell's license, which had returned no warrants.

While Trooper Roberts was in the patrol car, approximately ten minutes after the stop was initiated, Trooper Farabaugh arrived on the scene with the dog.[2]  Sergeant Helton then told Trooper Roberts that he would need to get Bell out of the car "one way

---

[2]Although Trooper Farabaugh does not appear on screen until later, he appears to have pulled up behind the police cruiser out of view of the camera.  One of the Officers can be heard commenting to the other, "He's here."  J.A. at 183 (Video at 14:27:30).

or the other." J.A. at 183 (Video at 14:27:37). Sergeant Helton suggested that Trooper Roberts give Bell a warning for speeding and have Bell get out of the car while writing the warning so that the dog handler could walk the dog around the car to perform a sniff. Trooper Roberts then approached Bell's vehicle for a third time and told Bell that Roberts was going to give Bell a warning for speeding, rather than a citation. Trooper Roberts asked Bell to exit the vehicle, telling him, "We got a dog working the area. He just happened to stop right here behind me. He's going to run around your car, so maybe just step right out here in the front for me, and I'll explain the warning for you." J.A. at 183 (Video at 14:28:37-40). At approximately eleven minutes into the stop, Bell exited the vehicle and walked to the front of the vehicle, where he and Trooper Roberts sat on the guardrail and Trooper Roberts wrote out the warning and continued to question Bell about his story. Trooper Roberts testified that he had Bell exit the vehicle because Trooper Farabaugh prefers for officer-safety reasons that the car be empty when he walks the dog around the vehicle. Trooper Roberts admitted that he had Bell exit the vehicle only so that the dog could perform a sniff and not specifically for Roberts to issue the warning. He further testified that, had the dog not been there, the Officers "probably would not have approached the vehicle at that time," but instead the normal course would have been to make contact with Avis to investigate whether Bell had permission to operate the rental vehicle. J.A. at 62 (Roberts Test. at 35).

While Bell and Trooper Roberts were seated on the guardrail, at approximately twelve minutes into the stop, the dog approached Bell's car and began the sniff. J.A. at 183 (Video at 14:29:37). Although Trooper Farabaugh testified that the entire process took only fifteen to twenty seconds, the video shows Trooper Farabaugh motioning to Sergeant Helton that the dog alerted to the right rear side of the vehicle after approximately thirty-eight seconds, J.A. at 183 (Video at 14:30:15), or over twelve-and-a-half minutes into the stop. The dog sniff took approximately one minute and thirty-eight seconds overall, at which time Trooper Farabaugh confirmed to Sergeant Helton that the dog had alerted. Sergeant Helton then approached Trooper Roberts and Bell and told Trooper Roberts that the dog had alerted. The Officers then took Bell back to the patrol car and performed a search of the trunk of the vehicle. The Officers found four

black plastic bags over the right rear wheel well of the vehicle, where the dog had alerted, and the bags tested positive for crack cocaine.

Bell was arrested and indicted on one count of possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Bell subsequently filed a motion to suppress evidence and statements obtained as a result of the search, arguing that the Officers impermissibly extended the length of the detention without reasonable suspicion of drug activity. A hearing was held on May 22, 2006, at which Trooper Roberts, Trooper Farabaugh, and Sergeant Helton testified and a video of the traffic stop was played. The district court denied Bell's motion on May 26, 2006. In its order, the district court relied on testimony from Trooper Roberts that the average traffic stop where a warning is given, not involving a rental car, takes ten to twelve minutes. The district court found that "[t]he K-9 unit arrived between 6-8 minutes after the stop was initiated and it was less than a minute after the 'drug sniff' began that the K-9 alerted on the vehicle." J.A. at 108 (Dist. Ct. Op. at 6).[3] Because this was less than the average traffic stop, even without the additional time necessary when a rental car is involved, the district court found that the Officers did not detain Bell longer than the time necessary for an average traffic stop. Further, the district court found that, even if Bell had been detained longer than necessary, Trooper Roberts had articulated reasonable suspicion that Bell was engaged in criminal activity to justify extending the stop.

After his motion was denied, Bell pleaded guilty to the one-count indictment, reserving his right to appeal the denial of his motion to suppress. Bell was subsequently sentenced to the mandatory minimum of 120 months of imprisonment.

---

[3]Bell argues that the district court's factual findings that the dog sniff began six to eight minutes into the stop and lasted fifteen to twenty seconds are clearly erroneous because they are contradicted by the video. We agree. The district court apparently relied solely on the Officers' testimony, rather than the video, in making these findings. After viewing the video, we believe that it is clear that the dog arrived approximately ten minutes into the stop, J.A. at 183 (Video at 14:27:30), that the dog began sniffing approximately twelve minutes into the stop, (Video at 14:29:37), that Trooper Farabaugh indicated that the dog alerted approximately thirty-eight seconds into the sniff, (Video at 14:30:15), and that the dog sniff lasted approximately one minute and thirty-eight seconds, (Video at 14:31:15). Accordingly, we conclude that "[a]ny finding by the trial court to the contrary is clearly erroneous." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995); *see also Scott v. Harris*, 550 U.S. 372, ---, 127 S. Ct. 1769, 1776 (2007) (disregarding the appellate court's version of events to the extent the appellate court failed to "view[] the facts in the light depicted by the videotape").

## II. ANALYSIS

### A.  Standard of Review

"'When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*.'"  *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008) (quoting *United States v. Simpson*, 520 F.3d 531, 534 (6th Cir. 2008)).  Because "[t]he 'reasonable suspicion' determination is ultimately a mixed question of law and fact," "the application of the legal principles surrounding the nature of reasonable suspicion to the facts observed by an officer is reviewed *de novo* by this court." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002); *see also United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008).  "When a district court has denied the motion to suppress, we must 'consider the evidence in the light most favorable to the government.'"  *Pearce*, 531 F.3d at 379 (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)).

### B.  Legality of the Search

Stopping and detaining a motorist "constitute[s] a 'seizure'" within the meaning of the Fourth Amendment even if "the purpose of the stop is limited and the resulting detention quite brief."  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  An officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law.  *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).  "To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct."  *Townsend*, 305 F.3d at 541.  The Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended.  *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005); *see also United States v. Davis*, 430 F.3d 345, 355 (6th Cir. 2005).  Bell does not dispute that the Officers had probable cause to initiate the traffic stop based on a speeding violation.  He instead argues that the Officers unlawfully exceeded the purpose of the initial stop without

reasonable suspicion of further criminal activity.  Although we agree that the Officers did not have reasonable suspicion of drug activity, we conclude that such reasonable suspicion was not required because the Officers did not improperly extend the duration of the detention to enable the dog sniff.

### 1. Reasonable Suspicion

We first observe that the Officers did not have reasonable suspicion to hold Bell beyond the time reasonably required to fulfill the purposes of the initial stop for the speeding violation.  The government argues that the Officers had reasonable suspicion that Bell was engaged in other criminal activity justifying a longer stop based on seven factors:  (1) Bell repeated the same story and sounded rehearsed; (2) Bell moved too quickly for the rental agreement; (3) Bell was holding a cell phone; (4) Bell did not make eye contact with Trooper Roberts; (5) Bell was overly respectful and cooperative; (6) Bell did not have written permission to operate the rental car; and (7) Sergeant Helton observed Bell's exaggerated body movements while in the vehicle.

"Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop."  *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).  "'Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity.'"  *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)) (alteration in original).  Initially, we note that we cannot consider the sixth and seventh factors, as these factors were not actually relied on by Trooper Roberts.  *See Townsend*, 305 F.3d at 541.  Regarding the other factors, the mere fact that Bell was holding a cell phone on his lap is innocuous in this case and certainly not strong enough to overcome the lack of other strong factors.  *See id.* at 544.  Several of the factors relate to Bell either seeming nervous or being overly cooperative, factors to which we have previously given little weight.  *See, e.g.*, *United States v. Urrieta*, 520 F.3d 569, 577 (6th Cir. 2008); *Townsend*, 305 F.3d at 543; *Smith*, 263 F.3d at 591, 593 (noting that such factors are "so innocent or susceptible to varying

interpretations as to be innocuous"). Trooper Roberts's testimony that Bell sounded rehearsed is the only factor to which we would give more than the slightest weight, but this factor is weakened because it is apparent from the video that Bell repeated his story only in response to Trooper Roberts's repeated questioning. Further, Bell's "story . . . lacks the indicia of the untruthfulness that we have held particularly suspicious in the past." *Townsend*, 305 F.3d at 543. Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that this court has "recognized as valid considerations in forming reasonable suspicion," they may not together provide reasonable suspicion if "they are all relatively minor and . . . subject to significant qualification," particularly where the "case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases." *Id*. at 545.

### 2. Scope and Duration of the Seizure

Although the Officers did not have reasonable suspicion of drug activity, we nonetheless conclude that the dog sniff was not unlawful because Bell's detention was not unreasonably delayed beyond the purposes of the initial stop in order to effect the search. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407. Absent reasonable suspicion of additional criminal activity, "all the officer's actions must be 'reasonably related in scope to circumstances justifying the original interference.'" *Townsend*, 305 F.3d at 541 (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). In a traffic stop, "an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity 'would be well within the bounds of the initial stop.'" *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999) (quoting *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996)). The district court determined that the seizure was not improper because it did not last as long as the average traffic stop. The government likewise argues that the duration of the

seizure was proper because it was shorter than the average traffic stop and the warning had not yet been completed when the dog alerted.

The government's reasoning, as does the district court's, somewhat misses the point. The proper inquiry is not whether Bell was detained longer than the average speeder, but whether he was detained longer than reasonably necessary for the Officers to complete the purpose of the stop in this case. *See Caballes*, 543 U.S. at 407; *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Further, the fact that the warning was never actually completed is not determinative: A stop may be unlawfully extended beyond the initial purpose even if the officer never formally completes the citation. *See, e.g.*, *Blair*, 524 F.3d at 752; *Urrieta*, 520 F.3d at 572. Therefore, we do not focus on the length of this stop as compared with the average traffic stop, but rather on "whether [the Officers] improperly extended the duration of the stop to enable the dog sniff to occur" in the particular circumstances of this case. *Caballes*, 543 U.S. at 408; *see also Sharpe*, 470 U.S. at 686 ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").

Bell argues that, because Trooper Roberts admitted that he asked Bell to exit the vehicle for the sole purpose of enabling the dog sniff, the Officers ceased diligently pursuing the purpose of the stop (i.e., the speeding violation) by pursuing a drug investigation rather than an investigation into the discrepancy in the rental agreement. Bell essentially urges us to conclude that reasonable suspicion is required unless all of the Officers' actions were focused precisely on the purpose of the stop with no deviation whatsoever. Although the diligence of the Officers is certainly a consideration in determining whether the Officers improperly extended the duration of the stop to enable the dog sniff, *see Sharpe*, 470 U.S. at 686; *Townsend*, 305 F.3d at 541, "[t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it," *Sharpe*, 470 U.S. at 687. In other words, the Officers' actions must have been "reasonably related" to the purpose of the

stop and not have unreasonably delayed the stop.  *Townsend*, 305 F.3d at 541.  To adopt the standard urged by Bell would be to eviscerate the Court's holding in *Caballes*, as any slight action of an officer—such as calling for a dog or taking a dog around a vehicle—could be seen as deviating from the original purpose of the initial stop.  *See Caballes*, 543 U.S. at 408 ("[C]onducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy.  Our cases hold that it did not.").  With regard to the order that Bell exit the vehicle, the Court has "held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'"  *Arizona v. Johnson*, 555 U.S. ---, 129 S. Ct. 781, 786 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)).

Viewing the facts in the light most favorable to the government, we cannot say that Trooper Roberts's failure to complete the stop before the dog alerted was unreasonable.  Trooper Roberts began a computer check of Bell's license immediately upon his first return to the patrol car.  Waiting for the results of the license check was clearly within the purpose of the initial stop, and only while waiting for the results of that check did the Officers discuss whether to call Trooper Farabaugh to walk the dog around the car.  Because the Officers already were waiting for the results of the background check, any time that the Officers spent in pursuing other matters while the background check was processing, even if those matters were unrelated to the original purpose of the stop, did not extend the length of the stop.  Once Trooper Roberts received the results of the license and warrant checks, on his second return to the patrol car, he decided to issue a warning and then almost immediately walked back to Bell's car and began writing the warning and discussing it with Bell.  It was during this discussion that the dog alerted.  At no time did the actions of the Officers improperly extend the length of the stop.

The investigation into whether Bell had permission to operate the rental vehicle, including Trooper Roberts's return to Bell's vehicle to ask about the rental agreement, also was within the purpose of the initial stop. Trooper Roberts testified that, had the dog not arrived, the normal course would have been to call Avis to investigate whether the car was stolen. Although this admission may seem troublesome at first glance, the decision to complete the speeding warning rather than to investigate the rental vehicle in no way prolonged the seizure or caused Trooper Roberts to deviate from completing the speeding warning. In fact, this decision actually expedited the stop: Had Trooper Roberts called Avis, the stop would have been further extended while Trooper Roberts awaited a response. Even though removing Bell from the vehicle was not directly related to completing the speeding warning, it cannot be said that this action caused the Officers unreasonably to deviate from completing the speeding investigation and warning. *See Caballes*, 543 U.S. at 408. While Bell was out of the vehicle, Trooper Roberts proceeded to write out the warning and discuss it with Bell. The fact that Trooper Roberts asked Bell questions about his travel plans while writing the warning does not make the detention unreasonable, because there is no evidence that this discussion extended the time required to write the warning. *See Johnson*, 129 S. Ct. at 788 ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000).

Given the Court's precedents, we simply cannot conclude that an officer violates the Fourth Amendment merely by asking a driver to exit a vehicle to effect a dog sniff when doing so does not extend the duration of the stop and does not cause the officer unreasonably to deviate from the purpose of the initial stop. Because the measures taken to enable the dog sniff did not improperly extend Bell's detention or cause Trooper Roberts unreasonably to deviate from investigation of the speeding offense, we conclude that the dog sniff was not improper.

### III. CONCLUSION

Because we conclude that the duration of the seizure was not unreasonably prolonged beyond the purposes of the initial stop, we **AFFIRM** the district court's denial of the motion to suppress.