**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0651n.06

Case No. 15-4220

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Dec 06, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| RICHARD LASH III, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. After unsuccessfully fleeing from a traffic stop, Richard Lash III found himself in police custody. A search of his car revealed that Lash had a firearm, which, as a felon, he was not permitted to possess. Lash claims that the officers had no right to seize the firearm because they unreasonably extended the traffic stop by asking to see his rental-car agreement. He also claims that the district court improperly granted a two-point sentencing enhancement for fleeing from the police. Because the detectives and the district court both acted properly, we affirm.

On a December night in 2014, Detectives Middaugh, Schroeder, and Periandri were on patrol in an unmarked vehicle, as part of their work for the Gang Impact Unit, when they noticed a vehicle with out-of-state plates pulling to the side of the road. Because it was late and they were patrolling a high-crime area, the officers decided to stop and observe. After idling for

about five minutes, the car pulled back onto the road. It drove a short distance (about five houses) before the headlights came on. Their suspicions aroused, the officers followed the car. The car failed to signal as it made a southbound turn, after which the officers stopped it.

The officers found Lash and two other passengers in the car. According to Middaugh, Lash looked nervous. He was sweating (despite the December weather), stuttering, and tapping his hand on his leg. On request, Lash provided his license and informed the officers that he had borrowed the car, a rental, from his girlfriend.

Upon learning that Lash's license was valid and that he had no outstanding warrants, the officers returned to the car with Lash's license. Middaugh was "about to let [Lash] go" when he noticed "a little piece of a plastic bag" sticking out from under Lash's leg. R. 28 at 14–15, 23–24. After seeing the bag, he asked Lash for his rental-car agreement. Middaugh acknowledges that he did so in part because he "kind of wanted to investigate a little further, and that gave [him] time and opportunity to do so." *Id.* at 15, 17. Had he not seen the bag, Middaugh says, he "likely" would not have issued Lash a traffic citation. *Id.* at 31–32.

Fortune, however, favored a different outcome. As Lash reached over to grab the rental agreement, Middaugh saw what appeared to be the butt of a gun inside the plastic bag. At that point, Middaugh opened the car door and asked Lash to step out. Lash refused. Although Middaugh had his hand in the car and Schroeder was in the midst of removing one of the other passengers, Lash "threw [the car] in drive" and accelerated forward, almost striking two of the officers as he fled. *Id.* at 16.

Lash did not make it far. Four houses down, he lost control of the car, ending up stalled on top of a tree stump. The officers arrested Lash, and a search of the car revealed a .38 caliber handgun in a plastic bag.

2

The government charged Lash with being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). After the district court denied his motion to suppress the firearm, he conditionally pleaded guilty. The court imposed a two-point enhancement to Lash's guidelines calculation to account for the flight from the police, and sentenced him to 42 months in prison. As permitted by the plea agreement, Lash appealed the rejection of his suppression motion and the district court's sentencing enhancement.

*Motion to suppress*. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Automobile stops amount to seizures, meaning that they too must be reasonable. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). It is eminently reasonable to stop a motorist when the police have probable cause to believe he committed a traffic violation. *Id*. at 810. What starts as reasonable, however, may become unreasonable in "its manner of execution." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010). To remain reasonable, the stop should last only as long as it takes "to effectuate the purpose of the stop." *Id.* (quotation omitted); *see Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). If officers wish to extend a stop, they need "reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). The legality of the seizure turns on the officer's objective justifications, not his subjective motivation. *Whren*, 517 U.S. at 813.

Gauged by these considerations, Lash's challenge comes up short. The officers had a reasonable justification for the stop. They saw Lash commit two traffic infractions: driving without headlights and failing to signal. *See* Ohio Rev. Code Ann. §§ 4511.39(A),

4513.03(A)(1). That sufficed to justify the initial seizure. *See United States v. Copeland*, 321 F.3d 582, 593 (6th Cir. 2003).

The officers' execution of the stop was also reasonable, as the officers had a legitimate explanation for detaining Lash further at each step along the way. The primary mission of a traffic stop is "to address the traffic violation that warranted the stop." *Rodriguez*, 135 S. Ct. at 1614. But it also allows for "ordinary inquiries incident to" the stop. *Id.* at 1615 (quotation omitted). These incidental inquiries "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* Checking a driver's rental-car agreement, like checking a driver's license, registration, or proof of insurance, falls within this category of routine incidental requests. *See Bell*, 555 F.3d at 542. The officers' decision to ask Lash to exit the vehicle likewise did not unreasonably extend the stop. Even without a reason to be suspicious, an officer may "order the driver to get out of the vehicle" during a traffic stop to ensure his own safety during the encounter. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). All in all, everything the officers did up to Lash's flight was reasonable—and it was of course reasonable to pursue (and seize) him after that.

Lash complains that, because Middaugh said that he was about to let Lash go before he saw the plastic bag, the traffic stop ended as soon as Middaugh returned to Lash's car. But the facts, which must be construed in favor of the district court's suppression ruling, show otherwise. *See United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). At that point, Middaugh had not written a ticket, issued a verbal warning, or told Lash that he would not do any of those things. Nor does the record establish that he had even returned Lash's license. All objective indicators show that the stop had not ended, bringing Middaugh's request to view the car's rental agreement "within the purpose of the initial" traffic investigation. *Bell*, 555 F.3d at 542. On this

record, whether Middaugh asked to see the rental agreement before or after seeing the plastic bag makes no difference to the outcome.

Lash adds that the request to examine his rental agreement was a makeweight. The officers' true motivation, he insists, was to investigate the contents of the bag or to pursue overarching suspicions about his behavior. But as *Whren* confirms, it is the objective facts, not the officers' alleged motivations, that drive the analysis. 517 U.S. at 813.

*Sentencing Enhancement*. Lash argues that the district court erred in imposing a two-point enhancement for obstruction of justice, namely his effort to flee from the officers. *See* U.S.S.G. § 3C1.1. The problem with this argument is that everything in the record points to the conclusion that the court enhanced his sentence under U.S.S.G. § 3C1.2, which provides a two-level enhancement for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer"—a guideline provision that applies quite naturally to a suspect who flees in a car.

Both the plea agreement and the presentence report refer to an enhancement under § 3C1.2. And at the sentencing hearing, the court found that the enhancement was appropriate "because there was a potential for the injury of—serious bodily injury or substantial risk of death based upon that moving vehicle and the officers in line with it"—which indeed invokes the language of § 3C1.2. R. 27 at 13. All of this confirms that the court applied § 3C1.2.

Notably, Lash does not argue that a § 3C1.2 enhancement would be inappropriate. Nor could he. The facts show that Lash acted recklessly in attempting to drive away while two officers and one passenger were close to (or partly inside) the vehicle. Surely that counts as a "gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. n.1 (defining recklessness for purposes of § 3C1.2).

5

Also notable is that Lash never asked for clarification of the enhancement at the hearing. While the plea agreement and presentence report refer to § 3C1.2, the district court never cited the provision during the hearing. But neither did Lash object to that ambiguity, even after the district court provided him with ample opportunity to do so, closing the sentencing hearing with a request for "any other objections, additions, [or] comments." R. 27 at 26. Lash cannot benefit from his silence now. *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004). Because Lash did not object during sentencing to that ambiguity, any challenge to it would be reviewed for plain error. *Id.*; *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008). For the reasons just given, he cannot meet the first step of plain-error review: that any error occurred.

We affirm.