NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0501n.06

No. 18-5877

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 03, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEXTER DURRELL COOPER, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge.    Dexter Cooper entered a conditional guilty plea for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of drug trafficking offenses, in violation of 18 U.S.C. § 924(c)(1)(A). He now argues that the police detained him unlawfully, and that the district court should have suppressed evidence that the police obtained as a result of that detention. We reject Cooper's arguments and affirm.

On September 22, 2016, around 12:37 a.m., Lexington Kentucky police sergeant Jesse Palmer was doing paperwork in his cruiser when he heard eight gunshots from the southeast— loud enough that he thought at first that someone was shooting at him. Palmer reported the gunshots to dispatch, then turned his cruiser around and drove south to investigate. Less than a minute later, he saw a charcoal-gray Chevy Impala approaching from the south, moving away from where the gunshots had been. Palmer turned around to tail the car. At first, the other driver

proceeded normally, but soon he turned abruptly onto a cross street and parked in the driveway of a darkened house. The driver exited his car and walked up to the house's front porch.

Palmer pulled up to the house, got out of his cruiser, and introduced himself to the driver, who identified himself as Dexter Cooper. Palmer said he was investigating the gunshots and asked Cooper why he was in the area. Cooper said he was at the house to visit a friend named "Robert." Palmer frisked Cooper, found nothing, and asked for consent to search the car. Cooper refused, but agreed to sit on the curb while Palmer waited for backup to arrive.

A few minutes later, officers Caleb Brill and John Finley arrived. They looked through the windows of Cooper's car and saw shell casings in plain view. Finley handcuffed Cooper and frisked him, again without finding anything. The officers also talked to a woman who lived in the house, who said that no one named "Robert" lived there. Palmer doubted that he had probable cause for an arrest, so he decided to tow the car and release Cooper. Before the officers did so, however, Brill frisked Cooper once more—and found cocaine in his pocket.

The police then arrested Cooper. Later that day, the officers obtained a warrant to search Cooper's car, where they found a 9mm pistol with one round either in the clip or in the chamber, eight shell casings, heroin, crack cocaine, methamphetamine, and drug paraphernalia. The government thereafter charged Cooper with possession of a firearm in connection with drug trafficking, possession of a firearm as a felon, and possession of heroin, cocaine, and methamphetamine with intent to distribute.

Cooper moved to suppress the evidence found in his car. The district court held an evidentiary hearing at which Palmer, Brill, and Finley testified; afterward, the court denied the motion. Cooper later pled guilty to two of the five charges, reserving the right to appeal the denial

of his motion to suppress. The district court sentenced Cooper to 120 months' imprisonment. This appeal followed.

Cooper challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its findings of fact for clear error, viewing the evidence in the light most favorable to the district court's decision. *See United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007).

If an officer "possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). Reasonable suspicion requires specific, articulable facts, "which, taken together with rational inferences from those facts, reasonably warrant the continued detention[.]" *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009).

Cooper contends that Palmer and then the other officers lacked reasonable suspicion to detain him. The district court found, based on Palmer's testimony, that Palmer had "heard several gunshots kind of southeast of [his] direction," which were close enough that he "thought perhaps I was getting shot at"; that he "performed a U-turn and began heading south" toward the sound of the gunshots; that "less than a minute" later Cooper's car approached from the direction of the shooting; that Palmer began to follow him; and that Cooper soon made a "quick, abrupt turn" and parked in the driveway of a darkened house. R. 202 PageID 1468–70. That tactic in particular, based on Palmer's "experience and training," was a common one to evade interaction with the police. *Id.* at 1470. And "evasive behavior is a pertinent factor in determining reasonable suspicion." *United States v. Johnson*, 620 F.3d 685, 694–95 (6th Cir. 2010). Moreover, Cooper was the only person Palmer saw coming from the area of the gunshots. R. 202 PageID 1469.

Under these circumstances, we agree with the district court that Palmer's initial detention of Cooper was based on reasonable suspicion. *See United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006).

Cooper contends, however, that Palmer heard the gunshots 37 minutes before he encountered Cooper, rather than "less than a minute" before. As support, Cooper cites an internal police report of the gunshots, which had a "0:00 Hrs." timestamp for "Time Reported." R. 58-1 PageID 327. But Palmer testified that the timestamp was "just part of the information reporting system," rather than a description of the time the call came in. R. 202 PageID 1478. Why, exactly, the report has that timestamp is not clear on this record; but nothing in that document or elsewhere in the record does much to refute Palmer's unequivocal testimony that he heard the gunshots "less than a minute" before he saw Cooper. Hence the district court did not clearly err when it accepted that testimony as true.

More briefly, Cooper contends that Palmer was driving away from the sound of the gunshots, rather than toward it, when he encountered Cooper. But Cooper simply overlooks Palmer's testimony that he executed a U-turn after hearing the gunshots, which would have pointed him toward where they came from, rather than away. *See* R. 202 PageID 1468.

Cooper also argues that the officers detained him too long—specifically, that Palmer should have released him once he frisked Cooper and found no weapons. But Palmer was entitled to investigate whether Cooper had been involved in a shooting just minutes before. *See United States v. Young*, 707 F.3d 598, 605 (6th Cir. 2012). That investigation had just begun when Palmer frisked Cooper, since the weapon used in the shooting might just as easily have been somewhere nearby rather than on his person. Moreover, on this record, Palmer did not delay his investigation unduly when he waited a few minutes for other officers to arrive and assist him. *See United States*

*v. Howard*, 621 F.3d 433, 452 (6th Cir. 2010). And once these officers arrived, they promptly saw shell casings in Cooper's car, which entitled them to investigate further. *See Hoover v. Walsh*, 682 F.3d 481, 497–98 (6th Cir. 2012). Cooper's arguments are therefore meritless.

The district court's judgment is affirmed.