**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 20a0044n.06

**Case No. 19-1535**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 23, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DAMARIO DAVON TUBBS-SMITH, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | O P I N I O N |

BEFORE:      COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

COLE, Chief Judge.  Michigan law requires drivers to use high-beam headlights when bright lights are necessary to illuminate the road ahead.  Anyone who has driven on a highway at night—particularly in the middle of a Midwestern winter—can appreciate the wisdom of such a rule.  But because high beams can blind oncoming traffic, the law contains an exception: when a driver comes within 500 feet of an oncoming vehicle, she must ensure that the beams do not cast "glaring rays" in the eyes of oncoming drivers.  Mich. Comp. Laws § 257.700(b).

On a February night in Ypsilanti, Michigan, Deputy Brian Webb pulled over Damario Tubbs-Smith for failing to dim his high beams.  That stop led to Deputy Webb's discovery that Tubbs-Smith had an outstanding warrant for his arrest, which led to a search incident to Tubbs-Smith's arrest, which, in turn, led to the discovery of evidence that ultimately formed the basis of

Tubbs-Smith's conviction on two counts of drug-related crimes. Although Tubbs-Smith admits he had his high beams on, he disputes that they would have impaired the vision of oncoming drivers. He contends that the stop was therefore illegal, and that the district court erred by denying his motion to suppress the evidence attained from the search and his motion for an evidentiary hearing. We affirm.

## I.  BACKGROUND

On February 21, 2018, at 11:00 p.m., Deputy Webb of the Washtenaw County Police Department observed Tubbs-Smith's red Honda pass oncoming traffic with its high beams on. Deputy Webb pulled the vehicle over and told Tubbs-Smith that the basis for the stop was the high beams law, stating that "you're not supposed to be driving with those on down the road." Tubbs-Smith apologized, turned the lights off, and gave Deputy Webb his driver's license and registration. Deputy Webb checked the documentation and learned that Tubbs-Smith had an outstanding felony arrest warrant in Michigan. He then arrested Tubbs-Smith and searched his pockets, finding crack cocaine and over $1,000 in cash. Another officer who had arrived on the scene then searched the car. That search yielded a crack pipe and other drug paraphernalia. Based on that evidence, the government charged Tubbs-Smith with two counts of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841. Deputy Webb also issued Tubbs-Smith a citation for expired license plates and failure to dim his high beams.

Tubbs-Smith filed a motion to suppress evidence gained through the search and requested an evidentiary hearing on the motion to suppress. He argued that he "did not commit a ticketable offense" because the lighting conditions were such that "a reasonable driver would use high beams while driving in the area where [Tubbs-Smith] was stopped." The district court denied Tubbs-Smith's motion for an evidentiary hearing, reasoning that the motion hinged on legal—not

factual—issues. However, the court sought further briefing on the legal issues raised in Tubbs-Smith's motion.

In his supplemental brief, Tubbs-Smith asserted that his actions were lawful because Michigan law only penalizes the use of high beams when the lights cast glaring rays into the eyes of oncoming drivers. Thus, he contended, the government lacked probable cause to effectuate the stop because the record was devoid of proof that his high beams blinded oncoming traffic. In response, the government noted that video evidence showed that Tubbs-Smith passed several oncoming cars with his high beams on, and that Deputy Webb therefore had probable cause to believe that glaring rays were projected into the eyes of oncoming drivers. The district court ultimately denied Tubbs-Smith's motion, reasoning that even if Tubbs-Smith's interpretation of Michigan law were correct, Deputy Webb's mistake of law was reasonable, so suppression of the evidence seized after the stop was unwarranted.

Tubbs-Smith then pleaded guilty to both counts in the indictment, reserving his right to appeal the order denying the suppression motion and the order denying his request for an evidentiary hearing. He was sentenced to the mandatory minimum sentence of ten years in prison.

## II. LAW AND ANALYSIS

"Stopping and detaining a motorist 'constitute[s] a seizure' within the meaning of the Fourth Amendment." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Thus, "[a]n officer may stop and detain a motorist so long

as the officer has probable cause to believe that the motorist has violated a traffic law." *Id.* (citing

*United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)).[1]

Here, the traffic law in question is Mich. Comp. Laws § 257.700. It provides that when a

driver operates a motor vehicle on a highway at night[2], "the driver shall use a distribution of light,

or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles

at a safe distance in advance of the vehicle. . . ." Mich. Comp. Laws § 257.700(a). But it places

a limitation on the use of high beams; namely, that "[w]henever the driver of a vehicle approaches

an oncoming vehicle within 500 feet, such driver shall use a distribution of light or composite

beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver . . ." *Id.*

at § 257.700(b). Whether Deputy Webb had probable cause to believe Tubbs-Smith was in

violation of § 257.700(b) depends on whether he had "a reasonable ground for belief" that Tubbs-

Smith was violating the law, a belief that is "supported by less than prima facie proof but more

than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

Here, the undisputed evidence establishes that Deputy Webb's stop was based on more

than "mere suspicion" that Tubbs-Smith violated § 257.700(b). The dash camera video shows that

Tubbs-Smith passed several oncoming cars before he was pulled over. The body camera video

reveals that Deputy Webb immediately informed Tubbs-Smith that he was pulled over because he

was "driving with [the high beams] on down the road" and that Tubbs-Smith still had his high

beams on when he was pulled over because he dimmed his lights once informed of the putative

---

[1] Our circuit requires some types of traffic stops to be supported by probable cause. *See, e.g.*, *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000). The government asks us to reconsider that holding. Appellee's Br. at 12–14. We need not address this argument because Deputy Webb had probable cause to believe that Tubbs-Smith violated Michigan law.

[2] The law is actually more precise than this: it requires such lighting to be used from "a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet." Mich. Comp. Laws § 257.684(a).

violation. Tubbs-Smith, moreover, stated in briefing before the district court that he "does not deny that his high beam lights were on for a portion of the time he was on Huron Street." (Def. Supp. Br., R. 33 at PageID 122 n. 3.)

In response to this evidence, Tubbs-Smith urges that we adopt the interpretation of § 257.700(b) advanced by the United States District Court for the Western District of Michigan in *Guilford v. Frost*, 269 F. Supp. 3d 816 (W.D. Mich. 2017). In *Guilford*, the court reasoned that high beams are "glaring" when they shine "uncomfortably or harshly bright, or brilliantly, dazzingly, or intensely and blindingly" into the eyes of oncoming drivers. *Id.* at 827. On this basis, it held that a "mere flash" of high beams would not violate the statute and concluded that "[f]rom this point forward, an officer in Michigan may not effect a stop solely for a mere flash pursuant to § 257.700(b), absent any truly 'glaring rays' shining into his or her eyes." *Id.* at 827. But even if *Guilford* represented an accurate assessment of Michigan law—a matter on which we express no opinion—it does not directly bear on the legal question here because it relates only to a momentary flash of high beams. There is sufficient evidence here that Tubbs-Smith's use of high beams was more than a "mere flash." After all, the dash camera shows that between the time Deputy Webb noticed Tubbs-Smith's Honda and the time Tubbs-Smith turned off his high beams, he had passed several oncoming cars. The principles in *Guilford* may establish that there is some question as to whether Tubbs-Smith *actually* violated § 257.700(b). But that is a question for the court responsible for adjudicating Tubbs-Smith's liability for the traffic citation: the 14B District Court in Ypsilanti. The question before us is only whether Deputy Webb had *probable cause* to believe Tubbs-Smith violated the law. Given the incontrovertible evidence, we hold that Deputy Webb had sufficient reason to believe that Tubbs-Smith was in violation of § 257.700(b) to effectuate the stop.

Finally, Tubbs-Smith argues that he is, at minimum, entitled to an evidentiary hearing, because it is disputed whether his high beams were bright enough to create a distraction and whether Deputy Webb would have been in a position to see—from the point of view of an oncoming motorist—whether Tubbs-Smith's high beams were, in fact, distracting. But the government need not prove these facts to establish that Deputy Webb had probable cause to believe that the high beams projected glaring rays into the eyes of oncoming motorists. An evidentiary hearing is only required if a motion to suppress is "sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (emphasis and quotation marks omitted). Because there are no such issues here, an evidentiary hearing was not required.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's orders denying the motion to suppress and the motion for an evidentiary hearing.